IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JESSE FREDERICK-CONAWAY, | § | |
| | § | No. 359, 2016 |
| Appellant/Cross-Appellee, | § | |
| | § | Court Below: |
| v. | § | |
| | § | Court of Chancery |
| KEVIN M. BAIRD, COURT-APPOINTED EXECUTOR OF THE | § | of the State of Delaware |
| ESTATE OF EVERETT T. | § | C.A. No. 8379 |
| CONAWAY AND COURT-APPOINTED TRUSTEE OF THE | § | |
| EVERETT T. CONAWAY REVOCABLE TRUST, | § | |
| | § | |
| Appellee, | § | |
| | § | |
| and | § | |
| | § | |
| JANICE M. RUSSELL-CONAWAY, | § | |
| | § | |
| Appellee/Cross-Appellant. | § | |

Submitted: February 8, 2017
Decided: March 28, 2017

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

Upon appeal from the Court of Chancery. **AFFIRMED in part, REVERSED in part, and REMANDED.**

David N. Rutt, Esquire (*argued*), Moore & Rutt, P.A., Georgetown, Delaware, Attorney for Appellant/Cross-Appellee, Jesse Frederick-Conaway.

Stephen A. Spence, Esquire (*argued*), Baird Mandalas Brockstedt, LLC, Lewes, Delaware, Attorney for Appellee, Kevin M. Baird, Court-Appointed Executor of the Estate of Everett T. Conaway and Court-Appointed Trustee of the Everett T. Conaway Revocable Trust.

Robert G. Gibbs, Esquire (*argued*), and R. Eric Hacker, Esquire, Morris James Wilson Halbrook & Bayard LLP, Georgetown, Delaware, Attorneys for Appellee/Cross-Appellant, Janice M. Conaway.

**VALIHURA**, Justice:

Jesse Frederick-Conaway ("Jesse") and Janice Russell-Conaway ("Janice") were the original co-executors of the Estate of Everett T. Conaway ("Conaway") and co-successor trustees of the Everett T. Conaway Revocable Trust (respectively, the "Estate" and the "Trust").[1]  Janice is Conaway's widow, and Jesse is Conaway's adult son from another marriage.  After intractable disputes arose, the Court of Chancery removed Janice and Jesse and appointed Kevin M. Baird, Esq. ("Baird") as an independent successor administrator and trustee.  Baird petitioned the court for instructions on whether certain of Jesse and Janice's transactions were proper.  On July 14, 2016, the Court of Chancery issued a Rule 54(b) order from which Jesse appealed and Janice cross-appealed.[2]

Jesse raises the following issues on appeal:  (1) whether the Court of Chancery properly merged the administration of Conaway's Estate and Trust; and (2) whether the Trust's interest in a limited partnership may be used to satisfy specific gifts where the Court of Chancery had held that the interest was subject to a contractual restriction on transfer and passed to Jesse as residuary beneficiary of the Trust.[3]

Janice's cross-appeal raises the question of whether the Court of Chancery abused its discretion by (1) finding Janice liable for interest at the legal rate on $150,000 that the

---

[1] To avoid confusion, this Opinion refers to Jesse and Janice by their first names.  No disrespect is intended.

[2] *See* Rule 54(b) Order, *In re Estate of Conaway*, No. 8379 (July 14, 2016) [hereinafter *Order*], *available at* Ex. G to Jesse Opening Br.

[3] *In re Estate of Conaway* (*Conaway I*), 2012 WL 524190, at *2 (Del. Ch. Feb. 15, 2012), *reargument denied*, 2012 WL 839553 (Del. Ch. Mar. 13, 2012), *aff'd sub nom*, *Russell-Conaway v. Frederick-Conaway* (*Conaway III*), 54 A.3d 257, 2012 WL 4478655 (Del. Sept. 28, 2012) (TABLE); *see also In re Estate of Conaway* (*Conaway II*), 2012 WL 839553, at *1 (Del. Ch. Mar. 13, 2012).

1

court determined she had received properly but prematurely; and (2) finding Janice liable for $77,987 she had improperly removed from the Estate, plus interest at the legal rate.

For the reasons set forth below, we AFFIRM those portions of the Court of Chancery's Order: (1) directing Jesse to return the Trust's 69% EJKC Limited Partnership interest, together with all interest and dividends paid thereon, to the Trust, to be treated as part of the residue of the Trust; and (2) finding Janice liable for amounts totaling $77,987 with interest at the legal rate. We REVERSE the Court of Chancery's determination that Janice's receipt of $150,000 in deferred payments owed to Conaway was proper. We also REVERSE the portion of the Court of Chancery's Order finding Janice liable for interest at the legal rate (as opposed to a rate applicable to funds on deposit) on the $150,000 she received. We REMAND this matter to the Court of Chancery for further proceedings consistent with this Opinion.

## I.     RELEVANT FACTS AND PROCEDURAL BACKGROUND

Conaway died testate on May 11, 2010. His Last Will and Testament (the "Will"), dated September 21, 2009, was filed with the Sussex County Register of Wills. Letters Testamentary were granted to Janice and Jesse as co-executors on May 26, 2010. Conaway also executed an Amended and Restated Revocable Trust Agreement on September 21, 2009 (the "Trust Agreement"). The Trust Agreement initially had been executed on September 3, 1993. The Will was a "pour-over" will, directing the executor to administer the Estate with the Trust as the ultimate beneficiary. The Trust Agreement contains the ultimate dispositive provisions. The inventory filed with the Register of Wills in November 2011 listed the following property as probate assets:

2

| Probate Asset | Fair Market Value |
|---|---|
| 3,592 shares of Fulton Bank ("Fulton") | $36,013.39 |
| 300 shares of Heinz | $15,750.00 |
| 133 shares of Del Monte | $2,525.67 |
| 50 shares of Pernix Therapeutic Hldgs. | $155.99 |
| 100 shares of Golf Trust | $179.00 |
| Delaware National Bank Account | $6,022.41 |
| PNC Bank Account | $4,300.33 |
| Household Furnishings | $25,000.00 |
| 2002 Silverado | $6,000.00 |
| 1978 Boat and 1955 Trailer | $500.00 |
| 2000 Utility Trailer | $2,500.00 |
| 1973 HMDE Utility Trailer | $750.00 |
| 1987 Dodge Pickup | $1,000.00 |
| TOTAL | $100,696.79 |

The First Account listed total probate assets of $100,696.79.

Conaway's Trust owned a limited partnership interest in EKJC Partnership, L.P. (the "Partnership"), which Conaway created in 2002 to begin "transferring stock out of his estate for the benefit of Jesse."[4] The only other limited partner was a revocable trust created by Jesse. The Partnership's general partner was Confam, Inc. ("Confam"), which Conaway and Jesse owned in equal shares. Upon its formation, the Partnership owned 79,533 shares of Fulton stock. The Limited Partnership Agreement ("LPA") precluded assignment or transfer of limited partner interests without the consent of the general partner and the other limited partner. At the time of Conaway's death, the Trust owned a 69% interest in the Partnership (the "Limited Partnership Interest" or "LPI"); a Morgan Stanley account; 32,486 shares of Fulton stock; and a 50% interest in Confam.

---

[4] App. to Janice Answering Br. on Appeal & Opening Br. on Cross-Appeal at B27. "EKJC" is an acronym for "Everett, Jesse, Kieran Conaway." Kieran is another member of the Conaway family. *See* Jesse Opening Br. at 4 n.2.

3

According to Baird's Petition for Instructions, these assets, upon Conaway's death, were valued as follows:

| Trust Asset | Value |
|---|---|
| Morgan Stanley Active Assets Account | $36,088.24 |
| 69% Interest in the Partnership | $814,131.00 |
| 50% Interest in Confam, Inc. | $5,899.50 |
| 32,486 Shares of Fulton Stock | $336,230.10 |
| TOTAL | $1,192,348.84 |

In his Will, Conaway left his household furnishings and tangible personal property to Janice, with the residue of the Estate pouring over into the Trust. The Trust Agreement set forth the disposition of Trust assets after Conaway's death. It provided for Janice to receive the Morgan Stanley account and 23,000 Fulton shares.[5] Additionally, 1,000 shares each were given to seven individuals, and 200 shares were designated for the Seaford Historical Society (together, the "Other Beneficiaries"). The balance of the corpus and any accumulated income were to be distributed to Jesse.

The specific gifts of the Trust's Fulton stock to Janice and the Other Beneficiaries have never been carried out. Instead, Jesse and Janice liquidated the 32,486 Fulton shares owned by the Trust for a total of $326,420.76 shortly after Conaway's death to satisfy an unsecured line of credit in Conaway's name of approximately $260,000 from Delaware National Bank (the "DNB Loan"). From the proceeds, Jesse and Janice paid the DNB loan and $10,355.46 in funeral expenses and reimbursed Janice for $3,118.64 in Estate expenses. Approximately $52,500 (of Trust assets) remained, which was deposited into an "estate account" Jesse and Janice created to hold the liquidated stock

---

[5] Janice was given 10,000 Fulton shares, plus an additional 1,000 for each year of her marriage to Conaway. *See* App. to Jesse Opening Br. at A20 § 3A.

(the "Estate Account"). Although the name suggests that the Estate Account should have held only Estate assets, it appears to have been funded with Trust assets instead. This comingling of Estate and Trust assets was one of the issues brought before the Court of Chancery in Baird's Petition for Instructions.[6]

The Trust Agreement included two additional gifts to Janice, one of which was declared void by the Court of Chancery and the other of which is contested in this appeal. *First*, the Trust Agreement provided for the Trust's LPI to be "distributed" to Janice. In an earlier litigation (the "2012 Litigation"), the Court of Chancery had determined that a restriction on assignment of limited partner interests in the LPA invalidated this attempted transfer.[7] The Court of Chancery's February 15, 2012 ruling and its March 13, 2012 denial of reargument were affirmed by this Court in an Order dated September 28, 2012.[8] Following the 2012 Litigation, Jesse removed the LPI from the Trust, allowed the Partnership to lapse, and transferred the Partnership's assets to a personal account in his name.[9] Jesse asserts that he subsequently revived the Partnership and retitled the account in which the stock is held.

---

[6] *See id.* at A107 (stating that "the $52,595.63 in unspent proceeds from the liquidation of the Trust's Fulton stock was retained by the Estate and comingled with other Estate assets"); *id.* at A108 (asking the Court of Chancery to determine whether Janice and Jesse should be charged as fiduciaries "for their comingling and failure reasonably to safeguard Trust funds").

[7] *See Conaway I*, 2012 WL 524190, at *1.

[8] *Conaway III*, 2012 WL 4478655.

[9] *See* App. to Jesse Opening Br. at A166 (request dated October 25, 2012 from Jesse to Morgan Stanley with instructions to move the Partnership assets to an account in Jesse's name "effective immediately"). The LPA provided that the Partnership "shall terminate upon the first to occur of" the following: (1) August 9, 2027; (2) the sale of all Partnership property; or (3) upon agreement of the General Partner and the Limited Partners. *Id.* at A39 ¶ 10.

*Second*, the Trust Agreement designated Conaway's stock in Conaway Development Industries, Inc. ("CDI"), or the proceeds of any sale thereof, for Janice. Before his death, Conaway entered into a contract for the sale of his CDI stock (the "Stock Purchase Agreement" or "SPA"), which entitled him to $150,000 in deferred payments (the "CDI Payments"). Conaway signed the SPA in his own name, and nothing in the record suggests that the stock or the CDI Payments were transferred to the Trust. Nevertheless, original Estate counsel Stephen Ellis ("Ellis") instructed the buyer of the CDI stock to make the payments to Janice, which she accepted. The CDI Payments were excluded from the First Account and Inventory filed with the Register of Wills, which indicated that the total debts of the Estate exceeded the assets by $190,169.37.[10] Had the CDI Payments been included in the Estate Inventory, the Estate assets would have been $250,696.79, and the debts would have exceeded the assets by only $40,169.37.

In addition to receiving the CDI Payments, Janice removed funds from the Estate Account totaling approximately $53,710.[11] Janice also received cash belonging to the Estate from a Del Monte merger that caused Conaway's Del Monte shares to be converted to $2,257 and a Heinz going-private transaction that caused Conaway's Heinz shares to be converted to $21,750. Despite Jesse's objections, Janice continued to

---

[10] *Id.* at A14-15 (First Account); *see id.* at A7-13 (Inventory). Specifically, the First Account listed Total Probate Assets of $100,696.79 and Debts of the Estate at $263,733.70, not including funeral and other administrative expenses.

[11] *Order*, *supra* note 2, at ¶ (f); *see, e.g.*, App. to Jesse Opening Br. at A90 (referencing a $20,000 distribution to pay for Janice's mother's medical expenses); *id.* at A88 (referencing a $25,000 withdrawal from the "estate/trust account"); *id.* at A97 (copy of two checks drawn on the Estate Account, one payable to Janice and the other for a car payment).

withdraw from the Estate Account until it was nearly depleted. Between the withdrawals and the stock transactions, Janice received approximately $77,987.

On August 20, 2013, the Court of Chancery removed Janice and Jesse as co-executors and co-trustees and appointed Baird in their place. Baird petitioned the Court of Chancery for instructions as to the propriety of Jesse and Janice's management of the Estate and Trust, specifically with respect to the liquidation of the Trust's Fulton stock, the CDI Payments to Janice, Jesse's removal of the LPI from the Trust, and the $77,987 in distributions to Janice.

After several hearings, the Court of Chancery issued a Rule 54(b) order (the "Order"). The Order provided that: (1) Jesse must return the LPI to the Trust, together with all interest and dividends paid thereon; (2) Janice properly received the CDI Payments, but is liable to the Trust for interest at the legal rate because she received them prematurely; and (3) Janice is liable for $77,987 plus interest at the legal rate. In earlier bench rulings, the Court of Chancery had stated that the liquidation of Trust assets to pay debts of the Estate was proper[12] and that the "value of [the LPI] ha[d] to be available to satisfy" the "specific bequests, [E]state expenses, creditors," and other obligations.[13]

---

[12] Ex. F to Jesse Opening Br. at 8 (Tr. 8:6-9) ("Wasn't the question was it proper[l]y used, those assets, to pay debts of the estate? Can't we just have an order that says yes, because that was my decision, was it not?").

[13] Ex. E to Jesse Opening Br. at 5 (Tr. 5:4-12); *see also id.* at 9 (Tr. 9:14-16) (stating that the LPI is "subject to specific bequests and estate administration"); *cf.* Ex. F to Jesse Opening Br. at 10 (Tr. 10:10-16) (stating that the ruling was that the "assets have to be available for estate expenses and specific bequests" and "[h]ow you handle it administratively, we may have to come back later if you all can't work it out").

The court commented that the "[T]rust was adopted into the [W]ill"[14] and that the Trust and Will constituted a "unified estate plan[.]"[15]

On appeal, Jesse contends that the Court of Chancery improperly applied the incorporation by reference doctrine to hold that the Will and Trust were merged into one unified administration. As part of that argument, he contends that the "unusual ruling by the Court below had the effect of permitting $150,000 of [Conaway's] personal assets in the form of the [CDI Payments] to be paid directly to Janice rather than be used to pay his personal debts."[16] Jesse further contends that "Janice should be ordered to disgorge the assets she received from the [E]state to the [T]rust in repayment of the [T]rust assets used to pay the [E]state debt."[17]

Jesse further argues that the Court of Chancery erred by ordering him to return the LPI, which he asserts cannot be used to satisfy any debts or specific gifts in the Trust due to the LPA's restriction on transfers.

In a cross-appeal, Janice contends that the Court of Chancery improperly charged her interest on the CDI Payments, and that it erred by holding her liable for the $77,987 in "advances" she received, plus interest at the legal rate.

---

[14] Ex. E to Jesse Opening Br. at 4 (Tr. 4:10-11); *see also id.* at 16 (Tr. 16:4-6) ("[B]equests in the [T]rust have to be looked at as though they are in the [E]state[.]").

[15] *Id.* at 6 (Tr. 6:12-13).

[16] Jesse Opening Br. at 22.

[17] *Id.* at 27.

8

**A.    *The Court of Chancery Erred in Merging the Administration of the Estate and Trust and in Concluding that the CDI Payments to Janice Were Proper***

Jesse contends that the Court of Chancery improperly relied on the "incorporation by reference" doctrine to hold that the Will and Trust were merged into a single administration.  He argues that, as a result, the court improperly found that the CDI Payments to Janice and the use of Trust assets to pay debts of the Estate were proper.  According to Jesse, the CDI Payments and other assets Janice removed from the Estate Account should be used to repay the Trust.

Baird agrees with Jesse that the payments to Janice were improper, but argues that use of revocable trust assets to pay a decedent's debts is permitted by Delaware law.

Janice argues that integration of the Will and Trust was proper under *In re Estate of Arcaro*,[18] such that Trust assets are subject to payment of Estate debts and expenses.

This Court reviews questions of law, including the Court of Chancery's interpretation of written agreements, *de novo*.[19]  We agree with Jesse (and Baird) that the Court of Chancery improperly ruled that the Will and Trust were merged into one unified, administrative scheme.  In *Arcaro I*, the testator's son was a beneficiary under his father's will and *inter vivos* trust.[20]  Although the son did not challenge the will, he

---

[18] *In re Estate of Arcaro* (*Arcaro I*), 1977 WL 9539 (Del. Ch. Oct. 12, 1977), *reargument granted*, 1977 WL 176267 (Del. Ch. Oct. 28, 1977), *on reargument*, 1977 WL 4530 (Del. Ch. Jan. 10, 1978).

[19] *Schock v. Nash*, 732 A.2d 217, 224 (Del. 1999) (citing *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 744 (Del. 1997)).

[20] *Arcaro I*, 1977 WL 9539, at *2.

argued that the trust, which had been drafted and executed under the same circumstances as the will, was invalid and procured by undue influence. The Court of Chancery ruled that the trust was valid because it satisfied all the elements of a trust. In *dictum*, the court stated, "[f]urthermore, the provision of Mr. Arcaro's will giving the residue of his estate to be distributed under the terms of the deed of trust is a valid incorporation by reference . . . ."[21] Notably, the court stated that the effect of the "incorporation by reference" was that the "assets not distributed under [the] will and not previously delivered to the trustee[] constitute[d] trust assets."[22] *Arcaro I* invoked the incorporation by reference doctrine in order to resolve the question of the validity of the deed of trust allegedly executed by the decedent. Here, no one challenged the validity of the Trust, and *Arcaro I* does not support Janice's expansive reading of it.

On reargument in *Arcaro II*,[23] the Court of Chancery considered whether the trust, having been incorporated into the will, was so inextricably a part of the will so as to estop the son (a legatee) from contesting its validity. The Court of Chancery ruled that the son was estopped from challenging the trust, since he had failed to challenge the will and had accepted the benefits of the will. In so ruling, the court stated that, "once [the trust] was incorporated by reference[,] the deed of trust became an inseparable provision of the will the validity of which was never challenged and whose benefits [the son] ha[d]

---

[21] *Id.*

[22] *Id.* at *3.

[23] *In re Estate of Arcaro* (*Arcaro II*), 1977 WL 4530 (Del. Ch. Jan. 10, 1978).

10

accepted."[24] It stated further that "the will and deed of trust together constitute a single testamentary scheme the interlocking nature of which is evidenced by the incorporation of the trust into the will."[25] The holdings in the *Arcaro* decisions focus on the issue of the validity of the trust and, in our view, should not be read more broadly as general support for the merging of the Trust and Estate for administrative purposes in this case.

To the Court of Chancery's credit, it recognized that "*Arcaro* doesn't specifically say you treat these as one big estate plan[.]"[26] However, it did read *Arcaro* to support the proposition that "the bequests in the [T]rust have to be looked at as though they are in the [E]state[.]"[27] We think *Arcaro* should be read more narrowly, and that the Court of Chancery erred in viewing the specific gifts in the Trust as being incorporated into the Will. In so doing, the court, in effect, improperly reordered the statutory priority scheme addressing bequests and the payment of debts. The proper treatment of the CDI Payments reduces the amount of funds needed from the Trust to satisfy the Estate's debts.

The Trust's specific bequest of the CDI Payments to Janice is void because those payments were due to Conaway personally, and the right to those payments was not transferred to the Trust during his lifetime. An inventory of estate property, which is filed in the Register of Wills, must include "a list of all debts and credits due or belonging

---

[24] *Id.* at *2.

[25] *Id.*

[26] Ex. E to Jesse Opening Br. at 27 (Tr. 27:8-10).

[27] *See id.* at 16 (Tr. 16:4-6).

11

to the decedent or to the decedent's estate[.]"[28]  The rights to the CDI Payments never belonged to the Trust and thus were personal property that should have been included in the Inventory and made available to satisfy the Estate's debts.

Further, executors "owe a duty to pay the claims of creditors of the decedent."[29] "In terms of the priority of claims against the estate, creditors take precedence over beneficiaries, who only are entitled to their bequests after the claims of creditors have been paid."[30]  The CDI Payments could not have poured over to the Trust to be disposed of according to the terms of the Trust until Estate debts were satisfied.  As such, the CDI Payments were not properly paid to Janice.  Accordingly, we REVERSE that aspect of the Court of Chancery's Order.

Additionally, Trust assets should not have been liquidated to pay Estate debts until Estate assets were exhausted.  Even accounting for the CDI Payments, the Estate was insolvent as of the filing of the First Account:

---

[28] 12 *Del. C.* § 1905(a).  If not included in the executor's inventory, the executor is required to file an additional inventory once he or she becomes aware of the debt due.  *Id.* § 1910.

[29] *In re Estate of Farren*, 131 A.3d 817, 840 (Del. Ch. 2016) (quoting *In re Ortiz' Estate*, 27 A.2d 368, 372 (Del. Ch. 1942)), *aff'd* 2017 WL 713634 (Del. Feb. 23, 2017).

[30] *Id.* (citing 12 *Del. C.* § 2312).

| Estate Assets[31] | | Estate Debts[32] | |
|---|---|---|---|
| DNB Account | $6,022.41 | Register of Wills | $237.00 |
| PNC Account | $4,300.33 | Coastal Hospice | $18.89 |
| Fulton Stock | $36,013.39 | Janice | $2,318.64 |
| Heinz Stock | $15,750.00 | DNB Loan | $261,396.17 |
| Del Monte Stock | $2,525.67 | Funeral Expenses | $11,790.46 |
| Pernix Ther. Stock | $155.99 | Attorney's Fees | $15,075.00 |
| Golf Trust | $179.00 | Closing Costs | $30.00 |
| Tangible Property | $35,750.00 | | |
| CDI Payments | $150,000.00 | | |
| **TOTAL** | **$250,696.79** | **TOTAL** | **$290,866.16** |

Payments to Janice from Estate assets prior to payment of Estate debts and other bequests were improper. Under proper administration, the Estate assets, including the CDI Payments, would have been exhausted by paying Estate debts, such that nothing would pour over from the Estate to the Trust. Instead, $40,169.37 of Estate debt would have remained. The Trust, with assets valued at approximately $1,192,350, originally held sufficient assets to pay the remaining Estate debt.

Janice has moved to strike Section I(C)(ii) of Baird's answering brief filed in response to Jesse's opening brief, arguing that it advanced an independent ground for reversing the Court of Chancery's ruling with respect to the CDI Payments that Jesse did not raise in his opening brief. We deny the motion. Although Jesse's arguments regarding the CDI Payments could have been more clearly articulated on appeal, he sufficiently raised the question of whether the CDI Payments were properly paid to Janice in his opening brief.[33] Section I(C)(ii) of Baird's answering brief frames the issue

---

[31] *See* App. to Jesse Opening Br. at A9-10 (Inventory); *id.* at A12 (Inventory); *id.* at A104 (Petition for Instructions).

[32] *See id.* at A15 (First Account).

[33] *See, e.g.*, Jesse Opening Br. at 22, 23-24, 25, 27.

13

more directly but does not raise a new argument such that the motion to strike should be granted. For instance, reference to Section I(C)(ii) of Baird's brief is not necessary for this Court to conclude, as Jesse contends, that the CDI Payments were estate assets; that those payments were improperly paid to Janice instead of being used to pay Estate debts; and that the Estate assets Janice improperly received should be returned. Janice was on notice of the above points and had the opportunity to respond to them in her answering brief—and she did so.[34] Moreover, this Court had the benefit of reviewing Janice's arguments to the Court of Chancery, where the issue was directly raised in Baird's Petition for Instructions and fully briefed and argued by the parties in multiple hearings. As such, Janice suffered no prejudice, particularly in view of Baird's unique role as a court-appointed administrator and trustee who, as the petitioner below, is also a party to this appeal.

As noted above, the Trust would have been liable for an estimated $40,169.37 had the CDI payments been included in the Estate's Inventory.[35] With the advice of Estate counsel and absent formal submission of the DNB claim against the Estate, Janice and Jesse sold the Trust's 32,486 shares of Fulton stock for $326,420.76. The proceeds were used to satisfy the DNB debt, as well as $10,355.46 for funeral expenses and $3,118.64 in other expenses. Use of a Trust asset, the 32,486 shares of Fulton stock, to satisfy a debt of the Estate before the probate assets were applied in full was improper.

---

[34] *See, e.g.*, Janice Answering Br. on Appeal & Opening Br. on Cross-Appeal at 17, 20, 21.

[35] This figure is likely higher due to administration fees and expenses associated with this litigation.

***B.***    ***The LPI Must Remain in the Trust, and the Law of the Case Doctrine Does Not Preclude this Result***

Jesse contends the Court of Chancery violated the law of the case when it ordered Jesse to return the LPI to the Trust, where it would be subject to claims of creditors, as well as payments of estate expenses and specific bequests. Further, Jesse argues that Partnership assets cannot be reached to satisfy the Trust's obligations, because the holder of the LPI has no interest in any specific Partnership property under 6 *Del. C.* § 17-701.

Baird argues that the LPI may only pass to Jesse after all other gifts and expenses are paid. He contends that the law of the case doctrine does not apply because the 2012 Litigation was a different case. Alternatively, Baird asserts that the doctrine is flexible enough for the trial court to correct or clarify prior rulings. Janice agrees that the law of the case doctrine does not apply and contends that Jesse waived the argument that the LPI cannot be used to pay Estate debts. Finally, she argues that Partnership assets may be used to pay expenses and the Trust's specific gifts.

This Court reviews a court's application of the law of the case doctrine *de novo*.[36] "The 'law of the case' is established when a specific legal principle is applied to an issue presented by facts which remain constant throughout the subsequent course of the same litigation."[37] The doctrine, "by its terms, contemplates one continuous action within the

---

[36] *Cede & Co. v. Technicolor, Inc.*, 884 A.2d 26, 36 (Del. 2005) (citing *Alphamed Inc. v. B. Braun Med., Inc.*, 367 F.3d 1280, 1285 (11th Cir. 2004)).

[37] *Kenton v. Kenton*, 571 A.2d 778, 784 (Del. 1990).

15

same court system."[38]  As the Court of Chancery recently explained:

> In practical terms, the doctrine appears most often when a trial court is required to give effect to law established in a case after it has been appealed and the appellate court has ruled on the relevant issues.  The doctrine also applies to decisions rendered by a court that arise again later in the same court, in the same proceedings—*i.e.,* a ruling at the summary judgment stage that also applies at the post-trial stage.  In more simplified terms, the law of the case doctrine operates as a form of intra-litigation *stare decisis*.[39]

However, "the law of the case doctrine is not inflexible in that, unlike *res judicata,* it is not an *absolute* bar to reconsideration of a prior decision that is clearly wrong, produces an injustice or should be revisited because of changed circumstances."[40]

In the 2012 Litigation, the Court of Chancery held that the Trust's LPI could not be transferred without Jesse's consent.[41]  As the Court of Chancery's February 15, 2012 Opinion states, *Jesse contended* that, because of the transfer restrictions, the "purported transfer to Janice is void; accordingly, [Conaway's] interest in [the Partnership] *passed to Jesse as residuary beneficiary of the* [*T*]*rust . . . .*"[42]  In denying reargument on March 13, 2012, the Court of Chancery stated that it had "found that the ownership interest in [the Partnership] passed to Jesse . . . upon the death of Everett Conaway."[43]  Then, in this action (C.A. No. 8379), the Vice Chancellor ordered Jesse to return the LPI to the Trust,

---

[38] *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 5278913, at *8 (Del. Ch. Sept. 10, 2015).

[39] *Id.* at *7 (footnotes omitted).

[40] *Gannett Co. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000) (emphasis in original) (citations omitted).

[41] *Conaway I*, 2012 WL 524190, at *3 ("The LPA quite plainly prohibits the sale, transfer, or assignment of any partnership interest absent the consent of the non-transferring partners.").

[42] *Id.* at *2 (emphasis added).

[43] *Conaway II*, 2012 WL 839553, at *1.

stating that Jesse's residuary interest in the LPI "was subject, obviously, to the demands of creditors, the [E]state expense[s] and the specific bequests therein" and that "the value of the [LPI] has to be available to satisfy" those demands.[44]

We conclude that the law of the case doctrine does not apply. Even ignoring that two different civil actions are involved, and even assuming this were a "continuous action" (which it technically is not), the law of the case does not prevent the Vice Chancellor from clarifying what he referred to as "sloppy" language in his 2012 decisions.[45] In viewing the 2015 ruling as a clarification, we observe that Jesse's own request for relief in the 2012 Litigation asked the court to hold "that the partnership units titled in the name of [the Trust] *passed by way of the residual clause to Jesse . . . .*"[46] Thus, it is consistent with Jesse's own litigation positions to view the Court of Chancery's August 2015 ruling that the LPI "had to be available in the residuary clause to satisfy specific bequests, [E]state expenses, creditors, *et cetera*, and then passed, despite the specific bequest which fails, to Jesse" as a clarification of its earlier 2012 decisions.[47]

Accordingly, we AFFIRM that portion of the Court of Chancery's Order requiring Jesse to return the LPI to the Trust.

---

[44] Ex. E to Jesse Opening Br. at 4 (Tr. 4:22-24); *id.* at 5 (Tr. 5:10-11); *see Order*, *supra* note 2, at ¶ (a).

[45] Ex. E to Jesse Opening Br. at 4 (Tr. 4:20) (Hearing on Supplemental Submissions and Ruling of the Court dated August 17, 2015); *see Gannett*, 750 A.2d at 1181.

[46] *See, e.g.*, App. to Janice Answering Br. on Appeal & Opening Br. on Cross-Appeal at B167 (emphasis added).

[47] Ex. E to Jesse Opening Br. at 5 (Tr. 5:4-8).

***C.***     ***The Court of Chancery Abused its Discretion in Charging Janice Interest at the Legal Rate on the CDI Payments, But Not in Holding Janice Liable for the $77,987 (Plus Interest) in Assets She Improperly Received***

Janice contends that the Court of Chancery erred by charging her interest on the CDI Payments, which the court held she received properly, but prematurely. Because Janice believes she would eventually have received the CDI Payments, with accumulated interest, she argues her receipt of the CDI Payments should only reduce her remaining interest in the Trust. She also argues that the Court of Chancery failed to explain its reasoning, which she asserts is a "*per se*" abuse of discretion. Finally, Janice contends that charging interest on the $150,000 is inequitable and contrary to the testator's intent.

Baird contends that if this Court determines the CDI Payments were improper, then Janice's argument concerning interest on the CDI Payments is moot. Baird emphasizes Janice's status as a fiduciary at the time she received the payments.

Jesse echoes Baird's fiduciary argument. He also asserts that the Court of Chancery explained its assessment of legal interest by noting that Janice was a fiduciary and that the legal rate is appropriate where a fiduciary diverts funds to herself.

Janice also asserts that the court ordered her to repay the $77,987 in assets she improperly received, which she characterizes as "advances" on the specific gift of 23,000 shares of Fulton stock from the Trust. She contends that her remaining beneficial interest exceeds this amount, and the court therefore should have ordered a charge to Janice's remaining beneficial interests in Trust assets, subject to a future divestiture in the event of the Trust's insolvency. Alternatively, Janice argues that any interest imposed should have been at the "actual-return standard" that was imposed on Jesse, who was ordered to

18

return the LPI to the Trust with accumulated interest. Finally, Janice contends that the court should have taken the more lenient approach utilized by the Court of Chancery in *In re Estate of Lomker*.[48]

Baird contends that Janice's liability is appropriate in light of her status as a fiduciary and that *Lomker*'s "lenient approach" does not control here.

Jesse echoes Baird's fiduciary argument and argues that *Lomker* is distinguishable.

"We review cases involving the Court of Chancery's exercise of its equitable powers for abuse of discretion."[49] "[T]he Court of Chancery's decision whether to award interest, to what extent, and at what rate is reviewed for an abuse of discretion."[50] Particularly in the context of application of remedies for breach of a trustee's duties, the Court of Chancery, in the exercise of its plenary equitable authority over the supervision of trusts, is accorded broad discretion.[51]

Section 104 of the Restatement (Third) of Trusts provides that a "beneficiary is not personally liable to the trust except to the extent of a loan or advance to the beneficiary from the trust[.]"[52] If the beneficiary is liable, "the trust is entitled to a charge

---

[48] Janice Answering Br. on Appeal & Opening Br. on Cross-Appeal at 47-48 (citing *In re Estate of Lomker*, 1999 WL 1022082 (Del. Ch. Nov. 1, 1999) (holding that penalizing an executor for filing an untimely and incomplete inventory and accounting would be inequitable where the complaining beneficiaries "contributed to the present situation and suffered little, if any, legally cognizable harm")).

[49] *In re Peierls Family Testamentary Trusts*, 77 A.3d 223, 226 (Del. 2013) (citations omitted).

[50] *Schock v. Nash*, 732 A.2d 217, 232 n.74 (Del. 1999).

[51] *McNeil v. McNeil*, 798 A.2d 503, 509 (Del. 2002).

[52] Restatement (Third) of Trusts § 104(1)(a) (2012). This Court has looked to the Restatement (Third) of Trusts for guidance on other areas of trust law. *See Otto v. Gore*, 45 A.3d 120, 130 (Del. 2012) (discussing manifestation of intent to create a trust and the use of parol evidence to

19

against the beneficiary's interest in the trust to secure the payment of the liability."[53]

A beneficiary who is also a fiduciary owes a duty to deal fairly with other beneficiaries and not to place his or her personal interests (as a beneficiary) ahead of the interests of the trust and its other beneficiaries.[54] "To remedy a breach of trust that has occurred or may occur, the court may order any equitable remedy, including" an accounting or "any other appropriate relief."[55]

The Court of Chancery has held fiduciaries liable, with interest at the legal rate, for diverting assets to themselves. For example, in *Gilmore v. Gilmore*,[56] the Court of Chancery found a co-trustee, who was also a beneficiary, liable for $273,000 plus interest at the legal rate where he wrote checks totaling that amount to himself and to an entity he controlled. The court also held the co-trustee liable for using trust funds to buy himself a vehicle and pay a mortgage, taxes, and maintenance on a property he co-owned with the settlors of the trust. In *In re Buonamici*,[57] the Court of Chancery found a guardian liable, with interest at the legal rate, to her ward's estate for undervaluation of the ward's assets

---

ascertain the terms of an apparent trust); *Law v. Law*, 753 A.2d 443, 448 (Del. 2000) (applying the prudent investor rule).

[53] Restatement (Third) of Trusts § 104(2).

[54] *In re Estate of Howell*, 2002 WL 31926604, at *2 (Del. Ch. Dec. 20, 2002).

[55] 12 *Del. C.* § 3581(b).

[56] 2008 WL 5244573 (Del. Ch. Dec. 3, 2008).

[57] 2008 WL 3522429 (Del. Ch. Aug. 11, 2008).

where that undervaluation did not constitute a breach of fiduciary duty, but nevertheless did cause the guardian to be unjustly enriched.[58]

Janice received the CDI Payments in December 2010 and December 2011.[59] Her argument that the $150,000 with accumulated interest would have gone to her eventually is without merit. As discussed above, the CDI Payments should have been paid to the Estate and would have been exhausted with the payment of Estate debts.

As to the proper rate of interest, in our view, charging Janice interest at the legal rate on the $150,000 in CDI Payments is inequitable in light of the circumstances.[60] Conaway's expressed intent was that Janice receive the proceeds from the CDI Payments. Janice received those funds after Estate counsel independently contacted the payor and directed him to make the payments to Janice rather than the Estate. Further, two of Conaway's intended dispositions to Janice have failed—the LPI and the CDI Payments. Finding Janice liable for interest at the legal rate as to the CDI Payments would result in an inequitable windfall to Jesse. Accordingly, we conclude that interest should have been

---

[58] *Id.* at *8-9. The *Buonamici* court also found that the guardian breached her duty of care in a separate transaction by loaning the ward's assets to the ward's mother without court approval, for which the court charged the guardian for the amount of the loan, plus interest at the legal rate. *Id.* at *9-10. The court noted that "nothing in the record suggest[ed]" that the guardian "acted out of bad faith." *Id.* at *10.

[59] App. to Jesse Opening Br. at A109. Baird requested instructions as to whether Janice should be charged for the two $75,000 payments with legal interest running from January 1, 2011 and January 1, 2012, respectively. *Id.* at A110.

[60] Although we typically accord the trial court broad discretion in these matters, we address the issue of interest (rather than remanding in view of our reversal as to the CDI Payments) in order to facilitate a more prompt end to this protracted litigation.

21

imposed at the rate paid for funds on deposit, which better reflects the return that would likely have been earned if the $150,000 had been deposited in the Estate Account.

We reach a different conclusion with respect to Janice's liability for the $77,987 in distributions she improperly received, which we view as qualitatively different from the CDI Payments based on the nature of Janice's participation.[61] Janice was both a fiduciary and a beneficiary who withdrew assets without her co-trustee's consent and used Estate assets to pay her personal expenses. As such, holding Janice liable for the $77,987, with interest assessed at the legal rate, is appropriate.

Janice's reliance on *Lomker* is misplaced. In *Lomker*, the Court of Chancery refused to assess a penalty on an executor's commission or share in the estate, even though the court found that the executor had filed an untimely and incomplete inventory and accounting. The court reasoned that penalizing the executor would be inequitable where the complaining beneficiaries contributed to the situation and suffered little, if any, legally cognizable harm. Unlike the executor in *Lomker*, who merely failed to file an inventory on time, Janice intentionally removed assets from the Trust and Estate. Also, unlike the beneficiaries in *Lomker*, the Other Beneficiaries in particular have suffered harm that is partially attributable to Janice.

---

[61] The record shows that Janice does not seriously dispute that the $77,987 was improperly removed from the Estate. *See* Ex. D to Jesse Opening Br. at 9 (Tr. 9:2-13) (counsel for Janice stating that Janice did not dispute that she received assets that she should not have received and that as a result she "will be indebted to what she is entitled to" receive from the Trust). *But see* Janice Answering Br. on Appeal & Opening Br. on Cross-Appeal at 38 (arguing on cross-appeal that Janice believed "that the receipt or advance of these sums was made upon advice of Mr. Ellis, to be treated as advances on [Conaway's] specific bequest to her of 23,000 shares of Fulton stock, all of which was sold at the outset of the Estate administration to pay the DNB loan").

Accordingly, we REVERSE that portion of the Court of Chancery's Order holding Janice liable for interest on the $150,000 at the legal rate, and instead find that she is liable for the $150,000 with interest imposed at the rate paid for funds on deposit, and we AFFIRM those portions of the Court of Chancery's Order finding Janice liable for the $77,987 plus interest at the legal rate.

### III.    CONCLUSION

In sum and based on the foregoing, we AFFIRM the portions of the Court of Chancery's July 14, 2016 Order:  (1) directing Jesse to "return the Trust's 69% [LPI], together with all interest and dividends paid thereon, to the Trust, to be treated as part of the residue of the Trust[;]" and (2) finding Janice liable for $77,987, with interest running at the legal rate on each item from the date listed until the date those amounts plus interest at the legal rate are returned.   We REVERSE the Court of Chancery's determination that Janice's receipt of $150,000 in CDI Payments "was proper, pursuant to the terms of the Trust" and its decision to hold Janice liable for interest at the legal rate (as opposed to the rate for funds on deposit) on the $150,000 in CDI Payments she received.[62]

Any remaining debts of the Estate, administrative expenses, and the specific gifts in the Trust should all take precedence over the Trust residuary.  The residue of the Trust should abate to satisfy any remaining Estate debts, fees, and expenses, as well as any

---

[62] *Order*, *supra* note 2, at ¶¶ (b)-(c).  We leave to the Vice Chancellor the mechanics of determining whether Janice's improper advancement of the $150,000 (with interest at the rate applicable to funds on deposit) and the $77,987 (with interest at the legal rate) to herself should be charged against any eventual Trust distribution still due to her—as opposed to directing her to repay these sums initially.

further fees and expenses chargeable to the Estate and Trust that accumulate until this matter is resolved.[63]  Because it appears that the residue holds substantial assets, on this record there should be no need to abate the specific gifts to pay Estate debts.  The Other Beneficiaries are entitled to receive the value of the shares of Fulton stock designated for them as provided in the Trust Agreement.  Likewise, Janice is entitled to the value of the 23,000 shares of Fulton stock and the Morgan Stanley Active Assets Account designated for her in the Trust Agreement, offset by the value of the Estate assets distributed to her, except reimbursement for administrative expenses and/or debts, and the amount of proceeds which she has already received from the sale of the Fulton shares held by the Trust.  After the above obligations are satisfied, Jesse is entitled to the residue.

We recognize that the residue in this instance is the LPI, which the Court of Chancery has held is not transferable without Jesse's consent due to the contractual restriction on transfers in the LPA.[64]  We also recognize that the LPI constitutes an interest in the Partnership, and not in the Partnership's underlying assets.[65]  We trust that the parties will work together to determine how to resolve this matter promptly.[66]

---

[63] *See* 12 *Del. C.* § 3595(a).

[64] *See Conaway I*, 2012 WL 524190, at *3.

[65] *See* 6 *Del. C.* § 17-701 ("A partner has no interest in specific limited partnership property.").

[66] It appears from the record that at least as of October 2016, the Partnership held assets comprised of Fulton stock and cash valued at $1,709,546.25.  App. to Jesse Reply Br. on Appeal and Answering Br. on Cross-Appeal at 6.  The Court of Chancery entered a standstill agreement prohibiting any impairment of 70% of the assets (corresponding to the Partnership and Confam's interests) pending this appeal. *Id.* at 2-3.

Janice's Motion to Strike is DENIED. The Court of Chancery's July 14, 2016 Order is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this Opinion. Jurisdiction is not retained.