**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:  October 8, 2019
Draft Report:
Date Submitted:   July 3, 2019

Richard E. Berl, Jr., Esquire
Hudson Jones Jaywork & Fisher, LLC
34382 Carpenter's Way Suite 3
Lewes, DE 19958

Dean A. Campbell, Esquire
Law Office of Dean A. Campbell
110 West Pine Street
PO Box 568
Georgetown, DE 19947

RE:   *In The Matter of the Last Will and Testament of Milton Ray Lomax*
        C.A. No. 2018-0434-PWG

Dear Counsel:

In this action, the decedent's son is challenging the validity of the decedent's last will and testament, claiming that the decedent did not have testamentary capacity to execute the will and that he was unduly influenced by another son.  The challenger also seeks an accounting of his brother's transactions while acting on behalf of the decedent.  The brother counterclaims for an accounting by the challenger when he acted as the decedent's agent. The brother moves for summary judgment, claiming that the doctrine of unclean hands precludes the relief

requested by the challenger; he should not be ordered to make an accounting because guardianship accountings he filed in another state should be given full faith and credit; and he is entitled to an accounting from the challenger. I recommend the Court grant the motion for summary judgment in part, and deny it in part. This is a final report.

## I.    Background

David Lomax ("David") filed a petition for review of proof of will under 12 *Del. C.* § 1309, on June 13, 2018, asking the Court to declare the Last Will and Testament of Milton Ray Lomax ("2013 Will") void because Milton Ray Lomax ("Decedent") did not have testamentary capacity to execute the 2013 Will and the 2013 Will was a product of undue influence.[1] He also asks that Robert Lomax ("Robert"), his brother, be required to file an accounting of all his transactions involving the Decedent's financial resources since January of 2013. The 2013 Will, which was executed on January 23, 2013, disinherited David, splitting the Decedent's estate between Robert and another brother, Thomas Lomax

---

[1] Docket Item ("D.I.") 1. I use first names in pursuit of clarity and intend no familiarity or disrespect.

("Thomas").[2]   It differed from the Decedent's earlier wills, which devised his estate to his three sons (David, Robert and Thomas) equally.[3]

Robert's August 16, 2018 answer denies that the 2013 Will is void; the Decedent was incompetent when he executed that Will; Robert exerted undue influence over the Decedent; or that Robert should account for his transactions involving the Decedent's finances.[4]   Robert's counterclaim seeks an accounting from David for his actions as Decedent's agent under a power of attorney executed on October 2, 2012 and revoked on October 23, 2012.   Those actions resulted in felony charges of theft and misappropriation of the Decedent's assets being filed against David in North Carolina.[5]   David's September 12, 2018 reply admits that David was charged with offenses in North Carolina, but denies that he violated his fiduciary duty as Decedent's agent and requests that the counterclaim be dismissed.[6]

Robert filed a motion for summary judgment ("Motion") on May 17, 2019.[7] He claims that the doctrine of unclean hands precludes the relief requested by

---

[2] *Id.*, Ex. I.

[3] *Id.*, Ex. C.  The Decedent's 1981 Will left his estate to his spouse, with his three sons as residuary beneficiaries.  *Id.*, Ex. A.

[4] D.I. 6.

[5] *Id.*

[6] D.I. 7.

[7] D.I. 21.

David, since David plead guilty to a felony, theft by false pretense, and has used a power of attorney to take $105,000.00 from the Decedent's assets; the accountings Robert filed with a North Carolina court as guardian for the Decedent should be given full faith and credit; and David must be ordered to provide an accounting for monies he obtained as the Decedent's agent.[8] David responds, on June 19, 2019, that the doctrine of unclean hands does not apply because there is no connection between the alleged misconduct and the relief sought; the accounting in North Carolina is not entitled to protections under full faith and credit; and Robert's request for an accounting from David is improper, since the transactions occurred over five years ago, David acted under the auspices of a valid power of attorney, and David's North Carolina criminal sentence did not provide for restitution.[9]

Robert's July 3, 2019 reply brief reiterates that David's reprehensible conduct is offensive to the integrity of the Court and argues David's conduct and this litigation are both related to the Decedent's estate.[10] He also asserts the five guardianship accountings filed by Robert in North Carolina involved similar claims and were approved by the court. Finally, Robert claims he is entitled to an accounting from David, since any delay related to the extended length of time the

---

[8] D.I. 22.

[9] D.I. 25.

[10] D.I. 27.

criminal charges remained pending, David's power of attorney did not allow him to engage in criminal self-dealing, and the decision on restitution, or lack of decision, in the criminal case does not bind this case.

## II.    Standard of Review

Under Court of Chancery Rule 56, the court grants a motion for summary judgment when "the moving party demonstrates the absence of issues of material fact and that it is entitled to a judgment as a matter of law."[11]  The moving party bears the burden of demonstrating that no material issues of fact are in dispute and that it is entitled to judgment as a matter of law.[12]  Once the moving party has satisfied that burden, it falls on the non-moving party to show that there are factual disputes.  Evidence must be viewed "in the light most favorable to the non-moving party."[13]  Summary judgment may not be granted when material issues of fact exist or if the Court determines that it "seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[14]

---

[11] *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012); *see also Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *2 (Del. Ch. Sept. 3, 1996), *aff'd*, 692 A.2d 411 (Del. 1997).

[12] *Wagamon*, 2012 WL 1388847, at *2; *Lundeen v. Pricewaterhousecoopers, LLC*, 2006 WL 2559855, at *5 (Del. Super. Aug. 31, 2006).

[13] *Williams v. Geier*, 671 A.2d 1368, 1389 (Del. 1996) (citing *Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 99 (Del. 1992)).

[14] *Williams*, 671 A.2d at 1388-89 (citing *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del. 1962)); *In re Estate of Turner*, 2004 WL 74473, at *4 (Del. Ch. Jan. 9, 2004) (citation omitted).

## III. Analysis

The first issue is whether the doctrine of unclean hands precludes David from obtaining relief in this action. Under the unclean hands doctrine, equitable relief is denied "where the litigant's own acts offend the very sense of equity to which [the litigant] appeals," if that inequitable conduct relates directly to the underlying litigation.[15] The Court of Chancery has broad discretion in deciding whether to grant relief under the unclean hands doctrine.[16] "Defendants bear the burden of pleading and proving 'unclean hands' as an affirmative defense."[17] For the unclean hands doctrine to apply, "the inequitable conduct must have an 'immediate and necessary' relation to the claims under which relief is sought,"[18] and the litigant must engage in "reprehensible conduct in relation to the matter in controversy."[19]

---

[15] *NHB Advisors, Inc. v. Monroe Capital LLC*, 2013 WL 6906234, at *2 (Del. Ch. Dec. 27, 2013) (citations omitted); *Nakahara v. NS 1991 Am. Tr.*, 718 A.2d 518, 522 (Del. Ch. 1998).

[16] *Cf. RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 876 (Del. 2015) (citing *SmithKline Beecham Pharm. Co. v. Merck & Co.*, 766 A.2d 442, 448-49 (Del. 2000) (citation omitted)).

[17] *Niehenke v. Right O Way Transp., Inc.*, 1996 WL 74724, at *2 (Del. Ch. Feb. 13, 1996).

[18] *Nakahara*, 718 A.2d at 523.

[19] *In re Rural/Metro Corp. Stockholders Litig.*, 102 A.3d 205, 237-38 (Del. Ch. 2014) (citing *Portnoy v. Cyro-Cell Int'l, Inc.,* 940 A.2d 43, 80-81 (Del. Ch. 2008)).

For the Court to determine that the unclean hands doctrine applies in this case, Robert must prove that David's inequitable conduct relates directly to this litigation and has an "immediate and necessary"' relationship to the claims under which relief is sought. In this litigation, David is challenging the validity of the 2013 Will under 12 *Del. C.* § 1309, claiming the Decedent lacked testamentary capacity and the 2013 Will was a product of undue influence. "Under Delaware law, all will contests start with the presumption that a testator had the capacity to make a will at the time it was made."[20] "The party challenging testamentary capacity bears the burden of proving that the decedent was legally incapable of executing a valid will."[21] Similarly, the challenger "carries the burden of proving that the will was a product of undue influence."[22]

To have the Decedent's 2013 Will declared invalid, David has the burden of showing the Decedent lacked testamentary capacity when he executed the will or that the 2013 Will was a product of undue influence. David plead guilty in North Carolina, on December 20, 2018, to the Class H felony of "obtaining property by false pretenses," when he removed $105,000.00 from the Decedent's credit union

---

[20] *In re Justison*, 2005 WL 217035, at *6 (Del. Ch. Jan. 21, 2005); *see also In re Baran*, 2017 WL 2491517, at *5 (Del. Ch. May 26, 2017); *In re Langmeier*, 466 A.2d 386, 389 (Del. Ch. 1983).

[21] *In re Justison*, 2005 WL 217035, at *6; *see also In re Baran*, 2017 WL 2491517, at *5; *In re Langmeier*, 466 A.2d at 389.

[22] *In re Justison*, 2005 WL 217035, at *6.

account on October 23, 2012 by using the Decedent's power of attorney.[23]  I find no direct relation, however, between David's misconduct and the matter in controversy here.  David's misconduct does not affect the validity of the 2013 Will, the Decedent's capacity to execute that Will, or whether it was a product of Robert's undue influence.  Robert, not David, took the Decedent to have the 2013 Will prepared.[24]    I disagree with Robert's argument that this litigation is directly related to David's misconduct because it involves the Decedent's assets – whether while he was living or after his death.[25]  Such claims are beyond the scope of this action and I decline to apply the doctrine of unclean hands, as a matter of law, or to recommend that the Court grant summary judgment on this issue.[26]

The second issue is whether the accountings Robert filed with a North Carolina court as the Decedent's guardian should be given full faith and credit by this Court, precluding David's request for an accounting from Robert.  Under the United States Constitution and the Full Faith and Credit Act ("FFCA"), every state is required to treat a judgment of another state with the same respect that it would

---

[23] D.I. 22, Ex. L, M.  David disputes some of the circumstances surrounding his actions, and whether he repaid some of the monies, but not that he acted. *See Id.*, Ex. M, at 11-12, 20-21.

[24] D.I. 1, ¶ 12.

[25] Robert argues David's conduct and this litigation are both related to the Decedent's estate – "first the estate owned in life by Milton Lomax, and then the same estate transitioned after his death."  D.I. 27, at 6-7.

receive in a court of the rendering state.[27] The FFCA has "long been understood to encompass the doctrines of *res judicata*, or 'claim preclusion' and collateral estoppel, or 'issue preclusion.'"[28] *Res judicata*, or claim preclusion, bars all claims that were litigated or could have been litigated in the earlier action.[29] For collateral estoppel, a judgment in a prior suit operates to preclude relitigation of a factual issue that was litigated and decided in a prior suit between the same parties or their privies, in a subsequent suit on a different cause of action.[30] When applying the preclusion analysis to a judgment from another state, the foreign judgment should be given the same effect "that it has in the state of rendition with respect to the persons, the subject matter of the action and the issues involved."[31]

Under North Carolina law, *res judicata* applies when a party shows "that the previous suit resulted in a final judgment on the merits, that the same cause of action is involved, and that both the party asserting *res judicata* and the party

---

[26] *See, e.g., Sloan v. Segal*, 996 A.2d 794, at *6 (Del. 2010).

[27] *See In re Vale for Asche*, 2013 WL 3804584, at *8 (Del. Ch. July 19, 2013) (citing U.S. Const. art. IV § 1, the Full Faith and Credit Act, 28 U.S.C. §1738, and *Matsushita Elec. Indus. Co., Ltd. v. Epstein,* 516 U.S. 367, 373 (1996)); *In re Vale*, 2015 WL 721038, at *3 (Del. Ch. Feb. 19, 2015).

[28] *In re Vale for Asche*, 2013 WL 3804584, at *8 (citation omitted).

[29] *O'Marrow v. Roles*, 2013 WL 3752995, at *3 (Del. Ch. July 15, 2013).

[30] *Cf. Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1216 (Del. 1991); *O'Marrow*, 2013 WL 3752995, at *3.

[31] *In re Wickes Tr.*, 2008 WL 4698477, at *5 (Del. Ch. Oct. 16, 2008) (citation omitted).

against whom *res judicata* is asserted were either parties or stand in privity with parties."[32]  And, a party asserting collateral estoppel "is required to show that 'the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to an issue actually litigated and necessary to the judgment, and that both the party asserting collateral estoppel and the party against whom collateral estoppel is asserted were either parties to the earlier suit or were in privity with parties.'"[33]  "In general, privity involves a person so identified in interest with another that he represents the same legal right."[34]

Robert has not proven that he is entitled to judgment as a matter of law, or that there are no material issues of fact, related to his claim that the FFCA would preclude him from providing an accounting.  I do not have sufficient information about the guardianship accountings to conclude that *res judicata* or collateral estoppel would apply under North Carolina law.  Issues remain on whether David would be considered a party or in privity with a party related to the guardianship accounting (such that David's interests would be identified as representing the same legal right as those involved in the guardianship), whether the financial guardianship matters were actually litigated, whether approval of the accounting by

---

[32] *Williams v. Peabody*, 719 S.E.2d 88, 92 (N.C. Ct. App. 2011) (citation omitted); *see also WMS, Inc. v. Alltel Corp.*, 647 S.E.2d 623, 626 (N.C. Ct. App. 2007).

[33] *Williams*, 719 S.E.2d at 93 (citation omitted).

[34] *Id.*, at 94 (citation omitted).

the clerk of court would be considered a final judgment and, ultimately, whether the claims and the issues in the guardianship and the accounting being sought are identical. A distinction exists between David's claim, which addresses all transactions Robert conducted since January of 2013, and the guardianship accountings, which do not cover the period between January of 2013 and May 8, 2013, when Robert was appointed the Decedent's guardian.[35] I recommend the Court deny Robert's motion for summary judgment on the issue of whether the FFCA prevents him from having to provide an accounting to David.

Finally, Robert seeks summary judgment on his claim that he is entitled to an accounting from David for the period that David served as the Decedent's agent under a durable power of attorney that was executed and recorded in North Carolina on October 2, 2012. By signing a power of attorney, the attorney-in-fact creates "a common law fiduciary relationship" and "must observe the duty of loyalty by acting in the best interest of the principal."[36] While David was acting as the Decedent's agent, he owed the Decedent fiduciary duties. The power of attorney required that the agent "provide an accounting for all funds handled and all acts performed as my Agent as required under state law or . . . at the request of

---

[35] D.I. 1, Ex. K (showing Robert was appointed the Decedent's guardian on May 8, 2013); *see also* D.I. 27, Ex. A (showing the guardianship accounting period started on May 14, 2013).

[36] *Cf. Lingo v. Lingo*, 3 A.3d 241, 244 (Del. 2010), *as corrected* (June 24, 2010).

11

any authorized personal representative, fiduciary or court of record acting on my behalf."[37]  It is clear from the power of attorney itself that the principal intended, and the agent understood, that an accounting would be required.  Because this power of attorney was created in North Carolina, North Carolina law governs.[38] And, the North Carolina Uniform Power of Attorney Act provides that a personal representative of the estate of a deceased principal and "[a]ny other interested person," may compel an accounting "by the agent, including the power to compel the production of evidence substantiating any expenditure made by the agent from the principal's assets."[39]

David's arguments against the accounting are unpersuasive.  David claims an accounting is not needed because he acted under a valid power of attorney and did not know that the power of attorney had been revoked at the time he withdrew the funds from the Decedent's account as his agent.  The Court has the authority to order David to provide an accounting of his actions under a valid power of attorney.  And, even assuming that David did not know about the revocation when

---

[37] D.I. 25, Ex. A.

[38] *Mascari v. Schmidt*, 2017 WL 3189551, at *3 (Del. Ch. June 16, 2017), *adopted,* (Del. Ch. 2017) ("The [Durable Personal Power of Attorney Act, Title 12, Chapter 49A of the Delaware Code] does not govern a power of attorney created pursuant to the laws of a different state.").

[39] N.C. Gen. Stat. Ann. § 32C-1-116.

he acted and would be protected under North Carolina law (since his actions occurred in North Carolina), his self-dealing (making out and cashing checks to himself for $105,000.00), was in violation of his duty to act in the Decedent's best interest and beyond his authority under the power of attorney. The power of attorney authorized him to provide for the support and protection of the Decedent, including for the Decedent's "food, lodging, housing, medical services, recreation and travel," and precluded him, as the agent, from gifting, appointing, assigning or designating the Decedent's assets to himself, his creditors or to discharge his legal obligations.[40]

Further, I disagree with David's claim that Robert forfeited the chance to examine these transactions because he did not challenge them for five years while the Decedent was alive. David's actions as the Decedent's agent remained under consideration in a criminal case for five years, or until December 20, 2018 (six months after this case had been initiated). And, his assertion that the North Carolina court's failure to order restitution in the criminal case against David serves as the law of the case is incorrect. "The 'law of the case' is established when a specific legal principle is applied to an issue presented by facts which remain constant throughout the subsequent course of the same litigation."[41] The

---

[40] D.I. 25, Ex. A, ¶¶ 7, 8.

[41] *Frederick-Conaway v. Baird*, 159 A.3d 285, 296 (Del. 2017) (citation omitted).

doctrine, "by its terms, contemplates one continuous action within the same court system."[42] I do not find that the law of the case applies in this situation, since the decision not to order restitution in the criminal charge against David did not occur in the course of this litigation, or in the Delaware court system. And, in the North Carolina court, the prosecutor and the defense counsel told the Court that restitution would be addressed in this civil litigation.[43] So, contrary to David's assertion that the Court declined to order restitution because it "impliedly recognize[ed] the validity of the power of attorney," the North Carolina court most likely relied upon counsels' statements that David's financial liability for his actions was going to be addressed in this action.[44] Accordingly, I find that, as a matter of law, Robert is entitled to an accounting addressing actions taken by David as the Decedent's agent under the power of attorney, and recommend the Court grant summary judgment on this issue. The accounting should be submitted within 60 days of the date this report becomes final. The issue regarding what

---

[42] *Id.* (citation omitted).

[43] The prosecutor stated: "[restitution was going to be addressed in civil litigation] going on in New England and we have determined to allow the civil attorneys in New England sort out what offset, if any, there would be for the conduct for that amount of money rather than have money come through our clerk's office in bits and pieces. Let them sort it out in New England." D.I. 21, Ex. M, at 17-18. (I assume that the prosecutor meant this litigation, and incorrectly referred to Delaware as "New England.") This is confirmed by the statement of David's counsel in the North Carolina criminal matter that addressing the money was "going to one of the issues in the State proceeding pending in Delaware [as to] whether that actually happened." *Id.,* at 20-21.

14

restitution, if any, is owed remains to be decided, once the accounting is completed.[45]

## IV. Conclusion

For the reasons set forth above, I recommend that the Court deny Robert's motion for summary judgment in part, and grant it in part. The motion should be denied because Robert has not met his burden of showing that, as a matter of law, the doctrine of unclean hands prevents David from seeking the relief he requests, or that the full faith and credit clause applies so that Robert's accountings in a North Carolina guardianship preclude him from providing an accounting to David. However, I recommend the Court grant summary judgment on Robert's counterclaim that David provide an accounting to him for his transactions as the Decedent's agent, and order that the accounting be submitted within 60 days after this report becomes final. This is a final report and exceptions may be taken under Court of Chancery Rule 144.

Respectfully,

/s/ Patricia W. Griffin

Patricia W. Griffin
Master in Chancery

---

[44] *See* D.I. 25, at 14-15.

[45] The accounting should focus on the monies identified in the North Carolina criminal matter as taken by David from the Decedent and any proof of David's return of those monies.