The TORO COMPANY, Plaintiff–
Appellant,

v.

WHITE CONSOLIDATED INDUS-
TRIES, INC. and WCI Outdoor Prod-
ucts, Inc., Defendants–Appellees.

No. 03–1424.

United States Court of Appeals,
Federal Circuit.

Sept. 13, 2004.

Rehearing En Banc Denied Oct. 22, 2004.

Earl D. Reiland, Merchant & Gould P.C., of Minneapolis, MN, argued for plaintiff-appellant. With him on the brief were Anthony R. Zeuli and Thomas J. Leach, III.

William G. McGuinness, Fried, Frank, Harris, Shriver & Jacobson, of New York, NY, argued for defendants-appellees. With him on the brief were Debra M. Torres, Pauline L. Wen and David A. Zilberberg. Of counsel was Laurie Berberich.

Before RADER, LINN, and DYK, Circuit Judges.

LINN, Circuit Judge.

The Toro Company ("Toro") appeals the decision of the United States District Court for the District of Minnesota granting summary judgment of non-infringement of United States Patent No. 4,694,528 ("the '528 patent") in favor of White Consolidated Industries, Inc., and WCI Outdoor Products, Inc. (collectively "White"). *Toro Co. v. White Consol. Indus., Inc.*, No. 4–95–656 (DWF/AJB), 2003 WL 21147769 (D.Minn. May 14, 2003) ("Opinion"). Because this court's previous claim construction is law of the case, and because the district court correctly held that the disclosure of unclaimed subject matter in the '528 patent triggers the disclosure-dedication rule, we affirm the district court's judgment in favor of White.

## I. BACKGROUND

Toro owns the '528 patent, which discloses and claims a "convertible vacuum-blower." Vacuum-blowers are handheld machines used primarily to vacuum or blow leaves and small lawn debris. *Opinion*, 2003 WL 21147769, at *2. As this

court's first opinion described in detail, the '528 patent discloses a vacuum-blower design with a removable cover to which is attached a restriction ring. *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1297–98 (Fed.Cir.1999) ("*Toro I*"). When placed over the air inlet, the restriction ring reduces the diameter of the air intake opening and increases the power of the blower. Because the ring can be easily removed from the opening, the machine's design does not impede its vacuuming ability. Claim 16, the only independent claim of the '528 patent at issue, recites with the disputed terms highlighted:

A convertible vacuum-blower comprising:

[1] a housing having an air inlet and an air outlet;

[2] a motor supported in said housing;

[3] an impeller having a plurality of impeller blades supported for rotary motion in said housing, in fluid communication with said air inlet and said air outlet, and rotatably driven by said motor;

[4] a removable air inlet cover for covering said air inlet, said air inlet cover having apertures for passage of air through the cover;

[5] attachment means for removably securing said air inlet cover to said housing; and

[6] said *cover including means for increasing the pressure* developed by said vacuum-blower during operation as a blower when air is being supplied to said impeller through said apertured cover.

'528 patent, col. 9, l. 15—col. 10, l. 11 (emphasis and clause numerals added).

In October 1995, Toro filed suit against White, alleging infringement of claim 16 and dependent claim 17 of the '528 patent. White's accused vacuum-blower has a restriction ring that is separate from, and replaceable within, the cover. The district court construed the disputed terms of claims 16 and 17, and granted Toro's motion for summary judgment of literal infringement. White appealed. This court reversed the district court's claim construction of clause 6 of claim 16, interpreting it to mean that the restriction ring, or "means for increasing the pressure," is "permanently affixed to and included as part of the cover." *Toro I*, 199 F.3d at 1302. We regarded this as not being a § 112, ¶ 6 question. See *id.* at 1300–01. White's accused vacuum-blower has a restriction ring that is separate or replaceable from the cover. This court thus remanded the case to the district court for a determination of infringement under the doctrine of equivalents, stating: "The court did not reach the question of whether the use of separate components for cover and ring would nonetheless infringe under the doctrine of equivalents. On this factual question of equivalency, material facts were in dispute." *Id.*

On remand, the district court interpreted our opinion in Toro I as holding that "a critical function of the air inlet cover claimed in the '528 patent is to automatically insert and remove the restriction ring." *Toro Co. v. White Consol. Indus., Inc.*, No. 4–95–656, slip op. at 8 (D.Minn. Aug. 9, 2000). The air inlet cover of White's accused vacuum-blower is not attached to the restriction ring and does not automatically insert or remove the ring. The district court granted summary judgment of non-infringement under the doctrine of equivalents for White's accused vacuum-blowers. The district court determined that this court's statement that material facts regarding equivalency were in dispute was merely dicta and that this court's remand instruction was "merely ... a shorthand signal that the issue of equivalency was not yet ripe for adjudication." *Id.*, slip op. at 12. Toro again appealed.

In the second appeal, this court determined that while the description and figures of the restriction ring in the specification were used "to help enlighten the meaning of 'said cover including [a restriction ring],'" *Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1371 (Fed.Cir. 2001) ("*Toro II*") (alteration in original), this claim construction "did not and could not import into the claim a function from the specification, particularly when the claim recites only purely structural limitations." *Id.* (citing *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed.Cir.1988)). Rather, we determined that the claim recited a structural limitation including a unitary cover and ring, and that while a number of functions were recited for this structure, the primary function as recited in the claims was to cover the air inlet of the vacuum-blower and to permit the passage of air. *Id.* We concluded that the district court's grant of summary judgment was improper because a genuine issue of material fact existed as to whether the separate ring and cover of the White product performed substantially the same overall claimed function as the cover disclosed in the '528 patent. The case was again remanded.

In this last remand, White moved for summary judgment of non-infringement under the doctrine of equivalents, asserting that under *Johnson & Johnston Associates, Inc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed.Cir.2002) (en banc), the two-piece cover/ring embodiment was dedicated to the public because it was disclosed, but not claimed. It relied on the following language from the specification: "Accordingly, building the flow restriction ring 76 as part of the air inlet cover 50, on which it

is needed, but leaving a similarly shaped ring off of the vacuum nozzle 98 is also advantageous in that it automatically restricts the size of air inlet 26 depending upon which operation is being conducted without having the operator manually insert or remove a replaceable ring." '528 patent, col. 7, ll. 6–12 (emphasis added). White argued, and the district court agreed, that the dedicated subject matter could not be recaptured through application of the doctrine of equivalents. Over Toro's objections, the district court granted summary judgment that White did not infringe the '528 patent under the doctrine of equivalents.[1] Opinion, slip. op. at 8.

Toro again appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

"We review the grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed.Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A district court's interpretation of our precedent is a question of law reviewed de novo. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1337 (Fed.Cir.2003).

Neither Johnson & Johnston nor any of our other disclosure-dedication rule cases have explicitly articulated a standard for reviewing the application of the disclosure-dedication rule. See, e.g., *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1356–57 (Fed.Cir.2004) (discussing applicable standards of review, but not for application of the disclosure-dedica-

---

**1.** The district court also granted Toro's motion for summary judgment of non-invalidity of the asserted claims. Opinion, slip. op. at 9. This facet of the district court's judgment is not appealed.

tion rule); *Johnson & Johnston v. R.E. Service Co.*, 285 F.3d 1046 (Fed.Cir.2002) (en banc); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1106–08 (Fed.Cir.1996) (discussing the disclosure-dedication rule). The disclosure-dedication rule limits application of the doctrine of equivalents, much in the same way as prosecution history estoppel. Under both doctrines, resort to the doctrine of equivalents is precluded based on actions of the patentee during prosecution evincing a surrender or dedication of subject matter. Accordingly, we conclude that both the dedication-disclosure rule and prosecution history estoppel should be analyzed under the same standard of review. Because "[p]rosecution history estoppel as a limit on the doctrine of equivalents presents a question of law," *Glaxo Wellcome, Inc. v. Impax Labs., Inc.*, 356 F.3d 1348, 1351 (Fed.Cir.2004) (citing *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1578 (Fed.Cir. 1997)), we hold that the disclosure-dedication rule likewise presents a question of law, subject to de novo review.

### B. Analysis

On appeal from the district court's findings, Toro makes three distinct arguments: (1) the district court erred in applying Johnson & Johnston because Toro did not intentionally decline to claim or deliberately leave unclaimed any disclosure of the structure of White's device; (2) the district court's application of Johnson & Johnston was flawed because the disclosure, if any, of the structure of White's device is insufficient under 35 U.S.C. § 112; and (3) the district court's conclusion that Toro disclosed, but did not claim, the structure of White's device in the '528 patent is contrary to this court's holding in Toro I, in which this court stated that the '528 patent neither illustrated nor described any structure other than a cover with an attached ring. White responds that the district

court properly applied our Johnson & Johnston precedent and that Toro's arguments to the contrary are unavailing.

### 1. Application of Johnson & Johnston

In Johnson & Johnston, this court held that

> when a patent drafter discloses but declines to claim subject matter ... this action dedicates that unclaimed subject matter to the public. Application of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would "conflict with the primacy of the claims in defining the scope of the patentee's exclusive right."

285 F.3d at 1054 (quoting *Sage Prods. Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed.Cir.1997)). In the patent at issue in Johnson & Johnston, the specification described aluminum as the preferred material for a substrate, and further remarked that "other metals, such as stainless steel or nickel alloys, may be used." *Id.* at 1055 (internal quotation marks omitted). However, the claims recited only aluminum. *Id.* This court held that even though steel substrates performed the exact same function as aluminum substrates, and even though the specification did not expressly disclaim or disavow steel substrates, the patentee could not invoke the doctrine of equivalents to recapture the use of steel substrates, which were disclosed but not claimed. *Id.*

The district court in the present case determined that "[t]he facts of this case are on all fours with the facts in Johnson & Johnston." *Opinion*, 2003 WL 21147769, at *2. The court held that while the '528 patent specification discloses both a replaceable ring and a unitary cover/ring structure, claim 16, as construed by this court in Toro I, covered only a "restriction ring ... permanently affixed to and in-

cluded as part of the cover." *Id.*, 2003 WL 21147769, at *6 (citing *Toro I*, 199 F.3d at 1302). For this reason, the district court concluded that Toro was barred from asserting that White's replaceable ring infringed the '528 patent under the doctrine of equivalents. The court thus entered judgment in favor of White.

### 2. Intent to Claim

■ Toro argues that any disclosure of and subsequent failure to claim the structure of White's device, i.e., a cover with a replaceable ring, was wholly unintentional and that the disclosure-dedication rule should not apply as a matter of law. See *Johnson & Johnston*, 285 F.3d at 1054 (noting that when a patent drafter discloses but "declines" to claim subject matter, that action precludes application of the doctrine of equivalents to capture "subject matter deliberately left unclaimed" (emphasis added)). Because Toro did not intend to leave a cover with a replaceable ring unclaimed, it argues that it should be permitted to assert infringement under the doctrine of equivalents. As evidence of its lack of intent to leave that structure unclaimed, Toro points to its use in claim 16 of the term "including" in the clause "said cover including means for increasing the pressure," and argues that "including" does not typically require physical attachment. Toro argues that the word "including," if given its broadest meaning, would have encompassed the replaceable ring. See *Toro I*, 199 F.3d at 1303 (Rader, J., dissenting). Toro also argues claim differentiation, noting that dependent claim 17 narrows independent claim 16 by requiring that the ring be "carried by said cover." If "including" requires attachment, Toro argues, then the scope of claim 17 would be no different than claim 16.

Toro also argues that this case parallels *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), in that objective evidence shows that Toro, just as the patentee in Graver Tank, did not deliberately leave disclosed subject matter unclaimed. See, e.g., *Johnson & Johnston*, 285 F.3d at 1053 (distinguishing Graver Tank from Johnson & Johnston by stating that previous opinions and the history of the case in Graver Tank "show that the patentee had not dedicated unclaimed subject matter to the public. In fact, the patentee had claimed the 'equivalent' subject matter, even if the Court eventually held the relevant claims too broad...."). Supporting this line of reasoning, Toro argues that the Supreme Court's criticism of bright-line rules in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002), supports a flexible approach in applying the Johnson & Johnston disclosure-dedication rule, leaving room for factually distinguishable cases such as Graver Tank.

White counters Toro's assertion that there must be intent to dedicate or leave subject matter unclaimed with the plain language of the Johnson & Johnston opinion: "Nor does this court agree that intent plays any role in the [disclosure-dedication] rule. To the contrary, one of the advantages ... is that it is a purely objective test. The patentee's subjective intent is irrelevant...." 285 F.3d at 1053 n. 1. White also argues that the Johnson & Johnston rule is fully consistent with Festo, pointing to the Supreme Court's distinction between "language's inability to capture the essence of innovation" and "a prior application describing the precise element at issue." *Festo*, 535 U.S. at 734, 122 S.Ct. 1831. Finally, White distinguishes Graver Tank, in that the patentee in that case had claimed the alleged equivalent, but the claim was later invalidated.

■■ We hold, as a matter of law, that intent is not part of the Johnson & Johnston disclosure-dedication analysis. The language of Johnson & Johnston is clear: "The patentee's subjective intent is irrelevant to determining whether unclaimed subject matter has been disclosed and therefore dedicated to the public." 285 F.3d at 1053 n. 1. Moreover, the absence of intent as a factor in applying the disclosure-dedication rule of Johnson & Johnston is consistent with both Festo and Graver Tank. Festo addresses circumstances, inter alia, in which the shortfalls of language or the unforeseeability of undeveloped technology preclude or hamper claim drafting. To the contrary, the disclosure-dedication rule applies to cases in which technology is both in existence and recognizably described in the written description of the patent, yet left unclaimed. As noted by White, Graver Tank is distinguishable on its facts. In Graver Tank, there was no question that the applicant actually claimed the subject matter at issue even though the claims were later invalidated. In this case, Toro can only argue that it attempted to claim the disclosed subject matter based on its preferred claim construction. This court, however, in Toro I, concluded that Toro had not claimed a replaceable ring—a holding that is the law of the case. See Section II.B.4, infra.

Because intent is not a factor in applying the disclosure-dedication rule, Toro cannot prevail as a matter of law based on its argument that it did not decline to claim or deliberately leave unclaimed the structure of White's device.

### 3. Sufficiency of Disclosure

■ Toro next argues that, even if the unintentional failure to claim an embodiment does not avoid the disclosure-dedication rule, the level of disclosure of a replaceable ring in the '528 patent is insufficient, as a matter of law, to trigger the disclosure-dedication rule. Specifically, Toro reasons that because Johnson & Johnston indicates that a patentee would have the opportunity to capture disclosed, but unclaimed, subject matter through reissue or continuation applications, 285 F.3d at 1055, the level of disclosure required to trigger a dedication must satisfy the standards of patentability under 35 U.S.C. § 112, ¶ 1, see *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir.2001) (noting that when an "applicant adds a claim or otherwise amends his specification after the original filing date, ... the new claims or other added material must find support in the original specification" to satisfy the written description requirement of 35 U.S.C. § 112, ¶ 1). According to Toro, the statement in Johnson & Johnston that patentees may seek reissue or continuation applications grafts the requirement of § 112 sufficiency onto the disclosure-dedication rule, and a disclosure insufficient to satisfy § 112 will not trigger the disclosure-dedication rule. In this case, Toro contends that the only portion of the '528 patent which discloses White's two-piece ring and cover structure is the phrase "without having the operator manually insert or remove a replaceable ring," '528 patent, col. 7, ll. 11–12, and that this phrase alone is insufficient to enable one of ordinary skill to make and use such a replaceable ring or to show with reasonable clarity that a replaceable ring was possessed by the inventor.

White argues that the disclosure-dedication rule does not impose a § 112 requirement on the disclosed subject matter, noting that, by its terms, § 112 applies only to claimed subject matter. According to White, Johnson & Johnston's comment regarding reissue or continuation applica-

tions is merely an observation of one recourse that may be available to a patentee who fails to claim disclosed subject matter in a patent.

■■■ We agree with White that the disclosure-dedication rule does not impose a § 112 requirement on the disclosed but unclaimed subject matter. The standards articulated in § 112 are directed to the claimed invention, not to disclosures in the written description that may implicate the disclosure-dedication rule. See, e.g., *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1567 (Fed.Cir.1996) ("The focus of a section 112 inquiry is not what a particular user decides to make and sell or even in what field the invention is most likely to find success. Rather, in keeping with the statutory mandate, our precedent is clear that the parameters of a section 112 inquiry are set by the claims."). Further, this court has previously considered the level of disclosure required to trigger the disclosure-dedication rule and has articulated the following standard:

> We thus hold that if one of ordinary skill in the art can understand the unclaimed disclosed teaching upon reading the written description, the alternative matter disclosed has been dedicated to the public.... The disclosure must be of such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed.

*PSC Computer*, 355 F.3d at 1360. Thus, the level of disclosure needed to implicate the disclosure-dedication rule is different from the level of disclosure required under § 112 to support claims defining the scope of coverage of an invention. Indeed, disclosures implicating the disclosure-dedication rule need not directly relate to the description of the claimed invention or be contained in the "Detailed Description of the Invention" section of the patent, but

may appear merely in the portion of the patent describing the "Background of the Invention." See *id.* at 1360 ("We agree with the district court, however, that the specific disclosure that '[o]ther prior art devices use molded plastic and/or metal parts that must be cast or forged which again are more expensive metal forming operations,' dedicated the alternative use of plastic parts to the public." (quoting U.S. Patent No. 6,061,239, col. 2, ll. 39–41 (Background of the Invention section))).

In the present case, the district court found no genuine issue of material fact in concluding that the disclosure of a replaceable ring would have been apparent to one of ordinary skill in the art. *Opinion*, 2003 WL 21147769, at *7 ("[T]here is no doubt that the specification of the '528 patent discloses the separate cover/ring structure employed by [White] in the allegedly infringing device. It does so by noting the inferiority of a device in which 'the operator manually insert[s] or remove[s] a replaceable ring.'" (quoting '528 patent, col. 7, ll. 11–12)). This court's conclusion in Toro I that the language quoted above from column 7, lines 11–12 of the '528 patent does not support a broader claim construction of the term "including," is neither inconsistent with nor contradicted by the district court's recognition that the patent mentions a replaceable ring—albeit requiring manual insertion and removal—in a way that would be understood by one of ordinary skill in the art. Nothing more is required to implicate the disclosure-dedication rule.

### 4. Applicability of Law of the Case

Toro makes two alternative arguments concerning law of the case. It first argues that the district court erred in concluding that the '528 patent discloses a cover with an unattached ring, a conclusion it contends is contrary to this court's

Toro I opinion. In particular, Toro notes that in construing the word "including," the Toro I panel repeatedly mentioned the lack of any disclosure other than a ring attached to the cover. Toro argues that based on these statements, the district court's subsequent holding that the '528 patent indeed discloses the structure of White's device violates the law of the case. Alternatively, Toro argues that if this court now upholds the district court's holding that the unattached ring is disclosed in the '528 patent, then this court should revisit its previous claim construction ruling and reconstrue the term "including" to be broader than requiring a physical attachment.

White responds to Toro's first argument by stating that Toro is confusing two fundamentally different matters—disclosure of unclaimed subject matter and description of claimed subject matter. Moreover, White argues that resort to the disclosure-dedication rule in this case is not precluded by the law of the case because the issue of the *Johnson & Johnston* disclosure-dedication rule was not briefed or argued and was not necessary to the decision of *Toro I* or *Toro II*. Rather, White argues that this court's ruling in *Toro I* was simply that the specification did not support Toro's proposed claim construction. To the second argument, White responds that there is no reason to overturn this court's claim construction in *Toro I*.

### a. Law of the Case

The doctrine of law of the case was "created to ensure judicial efficiency and to prevent the possibility of endless litigation." *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1580 (Fed.Cir. 1983); see also *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912) (law of the case doctrine "expresses the practice of the courts generally to refuse to reopen what has been decided"); *Roberts v. Cooper*, 61 U.S. 467, 481, 20 How. 467, 15 L.Ed. 969 (1857) ("[T]here would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate of chances from changes of its members."); *United States v. Turtle Mountain Band of Chippewa Indians*, 222 Ct.Cl. 1, 612 F.2d 517, 520 (1979) ("No litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time."). Further,

> [i]f the law-of-the-case doctrine is to have any substance, it must sometimes require a judge to uphold a ruling on a question that the judge would decide the other way if it were presented for the first time. In order to serve the interests of judicial economy, finality, and avoidance of "panel-shopping," the doctrine strongly discourages reconsideration of issues that a previous panel has addressed, fully considered, and decided.

*Hughes Aircraft Co. v. United States*, 86 F.3d 1566, 1578 (Fed.Cir.1996) (Bryson, J., concurring) (citing *Roberts*, 61 U.S. at 481; *Central Soya*, 723 F.2d at 1580). The law of the case doctrine is limited to issues that were actually decided, either explicitly or by necessary implication, in the earlier litigation. See, e.g., *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir.2001).

### b. The Court's Statements Regarding Patent Disclosure

Toro's first argument looks to the law of the case for support. Toro contends that this court's statements in Toro I that the '528 patent neither discloses nor describes any structure other than structure including an attached ring are law of the case to which we must

adhere. This argument is not persuasive. This court did not analyze the written description of the '528 patent for disclosed but unclaimed subject matter in Toro I. Rather, in that decision, this court construed a claim term and in that context concluded that the specification did not support Toro's proposed claim construction. As noted above, the written description necessary to support a claim construction is not necessarily the same as the disclosure of subject matter needed to invoke the disclosure-dedication rule. Material that is explicitly disclaimed in the specification—like the disclaimer of a removable ring in this case—is disclosed for purposes of the disclosure-dedication rule, but it cannot be encompassed within the scope of the claims. See, e.g., *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344 (Fed.Cir. 2001). Because the extent of the disclosure needed to invoke the disclosure-dedication rule was not at the crux of this court's earlier opinion, and because the disclosure-dedication rule was not even implicated in that decision, the statements Toro relies upon do not amount to law of the case. See, e.g., *Alpha/Omega Ins. Servs.*, 272 F.3d at 279 (limiting the law of the case doctrine to issues that were actually decided).

### c. The Court's Claim Construction

■ Toro's alternative argument attempts to avoid the law of the case doctrine. It is clear that this court's prior claim construction of the term "including" as requiring a "restriction ring ... permanently affixed to and included as part of the cover," *Toro I*, 199 F.3d at 1302, is law of the case. *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed.Cir.1998) (stating that claim constructions previously determined on appeal to this court are law of the case). Toro seeks to have this court depart from the law of

the case, arguing that if this court were to agree with the district court's finding that White's structure was disclosed for purposes of the disclosure-dedication rule, the claim construction of "including" in Toro I should be broadened.

■ Although a court may depart from the law of the case doctrine in "exceptional cases," such departures are rare. See, e.g., *Hughes Aircraft Co.*, 86 F.3d at 1578 (Bryson, J., concurring); *Mendenhall v. Barber–Greene Co.*, 26 F.3d 1573, 1582 (Fed.Cir.1994); *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900 (Fed.Cir.1984). A departure from law of the case generally requires the discovery of new and material evidence not presented in the prior action or "an intervening change of controlling legal authority, or [a showing that] the prior decision is clearly incorrect and its preservation would work a manifest injustice." *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed.Cir. 2001) (citing *Smith Int'l Inc. v. Hughes Tool Co.*, 759 F.2d 1572, 1576 (Fed.Cir. 1985)).

■ Toro does not argue new and material evidence. While Toro argues that Johnson & Johnston represents a change of law, its argument is misplaced. Johnson & Johnston did not alter our precedent as to claim construction, the issue at the crux of this case. Toro references the "clear error leading to manifest injustice" standard, but simply argues for reconsideration of the claim construction decided in Toro I without making a showing of either clear error or manifest injustice. Clear error requires more than a mere allegation that a prior panel rendered an unfavorable decision. Clear error leading to manifest injustice is judged under a "stringent standard": "A mere suspicion of error, no matter how well supported, does not warrant reopening an already decided point."

*Gindes v. United States,* 740 F.2d 947, 950 (Fed.Cir.1984) (quoting *N. Helex Co. v. United States,* 225 Ct.Cl. 194, 634 F.2d 557, 562 (1980)). "Only if we were convinced to a certainty that our prior decision was incorrect would we be warranted in now reexamining [it]." *Id.* (quoting *N. Helex,* 634 F.2d at 562). Under that exacting standard, this panel is not "convinced to a certainty" that clear error pervaded the claim construction in Toro I. See *id.*

In the few patent cases in which this court has revisited an issue and disregarded the law of the case, the circumstances were more "exceptional" than in this case. For example, in Mendenhall, the court determined that a previous panel's finding of liability for patent infringement should be overturned based on an intervening decision in another case holding the patent invalid. 26 F.3d at 1583 ("[T]he question presented is whether the invalidity judgment in [the other case], as affirmed by this court, presents an 'exceptional circumstance' warranting departure from the prior rulings that these defendants are liable.... In our view, clearly it is."). The circumstances of this case are not so "exceptional."

The doctrine of the law of the case is intended to prevent just the kind of speculation and second-guessing invited by the appellant here, in the broader interests of certainty, finality, and legal efficiency. The law is well-settled; decisions once made are not to be disregarded except for exceptional circumstances. Such circumstances are not evident here.

The Toro I panel was afforded full briefing and argument, was presented a full and accurate record, and relied on applicable precedent. The finding of disclosed subject matter sufficient to trigger the application of the disclosure-dedication rule is not inconsistent with the analysis in Toro I of the extent of claimed subject matter, leading to this court's construction of the claim term "including." In whatever light this or any other panel may view the claim construction of the Toro I panel, it cannot be said that it was so clearly erroneous as to result in manifest injustice, warranting disregard of the law of the case by the current panel.

## III. CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment of noninfringement in favor of White is

*AFFIRMED.*