# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MATTHEW SCIABACUCCHI and HIALEAH EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 11418-VCG |
| JOHN MALONE, GREGORY MAFFEI, MICHAEL HUSEBY, BALAN NAIR, ERIC ZINTERHOFER, CRAIG JACOBSON, THOMAS RUTLEDGE, DAVID MERRITT, LANCE CONN, and JOHN MARKLEY, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| CHARTER COMMUNICATIONS, INC., | ) ) ) | |
| Nominal Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Date Submitted:  May 5, 2021
Date Supplemented: June 22, 2021
Date Decided:  August 18, 2021

Kurt M. Heyman, Melissa N. Donimirski, and Aaron M. Nelson, of HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; Nathan A. Cook of BLOCK & LEVITON LLP, *Attorneys for Plaintiff Matthew Sciabacucchi.*

Gregory V. Varallo, of BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, Wilmington, DE, *Attorneys for Plaintiff Hialeah Employees' Retirement System.*

Peter J. Walsh, Jr., Brian C. Ralston, Tyler J. Leavengood, and Jaclyn C. Levy, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; OF COUNSEL: Richard B. Harper and Alyssa Pronley, of BAKER BOTTS LLP, New York, New York; Thomas E. O'Brian, of BAKER BOTTS LLP, Dallas, Texas, *Attorneys for Defendants John Malone and Gregory Maffei and non-party Liberty Broadband Corporation.*

David C. McBride, Martin S. Lessner, James M. Yoch, Jr., Paul J. Loughman, and Kevin P. Rickert, of YOUNG CONAWAY STARGATT & TAYLOR, LLP; OF COUNSEL: Zachary M. David and Adam M. Gogolak, of WACHTELL, LIBTON, ROSEN & KATZ, New York, New York, *Attorneys for Defendants Lance Conn, Michael Huseby, Craig Jacobson, John Markley, David Merritt, Balan Nair, Thomas Rutledge, and Eric Zinterhofer.*

**GLASSCOCK, Vice Chancellor**

1

Before me is the Plaintiffs' Motion for Leave to File a Second Amended Complaint (the "Motion").[1]  It was fully briefed as of May 5, 2021.  Subsequently, the parties wrote to inform me of the publication by this Court of other opinions relevant to the Motion.  At a June 22, 2021 teleconference, I informed the parties that I needed no further submissions and considered the matter submitted for decision as of that date.  This Memorandum Opinion is the result.

The overriding intent of this Court—indeed, its reason for existing—is to decide matters before it on a complete record and with submission of all claims for relief supported by that record, in the interests of justice.  It is for this reason that requests to amend the pleadings are, in the words of Court of Chancery Rule 15(a), "liberally granted."  Other considerations necessarily run counter to complete relief in any particular case, however.  Such a consideration is at hand; whether an amendment to add a party *after it has been dismissed with prejudice* under Rule 15(aaa) should be granted.

Rule 15(aaa) presents the plaintiff with a choice upon the filing of a motion to dismiss; it either chooses to file an amended complaint addressing the shortcomings called out in the motion, or it engages in contesting the motion via briefing.  If a plaintiff chooses the latter course and the motion is granted, the decision is with

---

[1] Mot. for Leave to File Verified Second Am. Derivative and Class Action Compl., Dkt. No. 247 [hereinafter the "Motion"].

prejudice, and the plaintiff is generally barred from repleading thereafter. The purpose of the rule, obviously, is to prevent the pernicious practice of using multiple motions to dismiss as honing stones against which to sharpen a claim, resulting potentially in a viable cause of action, but at the expense of the party opponent and the Court. For this reason, unless the Court explicitly rules otherwise, a motion to dismiss, if granted, is with prejudice.

The rub comes in the situation here. A partial motion to dismiss was granted, dismissing one of several defendants. The balance of the case went forward, and discovery proceeded. The Plaintiffs allege that they have discovered new evidence that will allow them to plead a viable case against the dismissed Defendant and seek leave to amend.

Rule 15(aaa) provides for the scenario which may provide relief where it is foreseeable that a record will develop that may implicate defendants against whom the plaintiff has failed to state a claim in the initial complaint. Such a plaintiff may seek a dismissal without prejudice, which the Court shall grant if the plaintiff can show cause why the default rule would work an injustice. Such a dismissal was not requested here, I did not determine that the dismissal was without prejudice, and relief under Rule 15(aaa) is not available at this stage in the proceedings. The party in question, Liberty Broadband Corporation, was dismissed with prejudice.

In order for the Plaintiffs' Amended Complaint to be permitted here, therefore, they must clear a high bar. The dismissal with prejudice is law of the case. The law of the case doctrine, like Rule 15(aaa) itself, is intended to prevent pernicious serial litigation of issues already decided in the matter at bar. Only where the moving party can show that justice compels departure from the doctrine due to clear error, injustice, or a change in circumstances is such relief granted.

Applying that standard to the Plaintiffs' Motion for Leave to Amend, I find that they have not cleared that high bar. Accordingly, only amendment to add a new claim, not previously dismissed, is allowed. My reasoning is below.

## I. BACKGROUND

*A. Factual Overview*

The facts of this matter have been thoroughly set out in two previous memorandum opinions[2] and I refer interested readers to those opinions for a detailed description. I provide here only a brief recitation of the facts sufficient to decide the Plaintiffs' Motion. There are four parties relevant to the Motion: (1) the Plaintiffs, who are stockholders of (2) the nominal Defendant, Charter Communications, Inc. ("Charter"), which was allegedly controlled by (3) Defendant John Malone, and (4) now non-party Liberty Broadband Corporation ("Broadband"). The Plaintiffs

---

[2] *Sciabacucchi v. Liberty Broadband Corp.*, 2017 WL 2352152 (Del. Ch. May 31, 2017) [hereinafter "*Sciabacucchi I*"]; *Sciabacucchi v. Liberty Broadband Corp.*, 2018 WL 3599997 (Del. Ch. July 26, 2018) [hereinafter "*Sciabacucchi II*"].

4

challenge as self-dealing certain transactions between Charter and Broadband (the "Broadband Transactions"), which were undertaken to facilitate two acquisitions which are, themselves, not challenged (the "TWC Acquisition" and the "Bright House Acquisition"). Necessary to the self-dealing charge is, of course, the allegation that Malone and Broadband together controlled Charter, at the very least, in connection with the Broadband Transactions, if not generally.

*B. Procedural History*

The Plaintiffs filed their initial complaint in this action on August 21, 2015.[3] An amended complaint was filed on April 22, 2016 (the "Original Complaint").[4] The Original Complaint alleged, both directly (Count II) and derivatively (Count IV), that Broadband and Malone "are *de facto* controlling stockholders of Charter" and "have violated their fiduciary duties by, among other things, causing the Board to agree to [the Broadband Transactions] which will unfairly expropriate and transfer voting and economic power from Charter's public shareholders to" Broadband and Malone.[5] Broadband and Malone moved to dismiss on July 22, 2016.[6] The Original Complaint also alleged in Count I a direct claim that Charter's directors (the

---

[3] Verified Class Action Compl. for Breach of Fiduciary Duties, Dkt. No. 1.
[4] Verified Am. Class Action Compl., Dkt. No. 15 [hereinafter, the "Original Complaint"].
[5] The Original Complaint ¶¶ 162–163, 170–171.
[6] The Liberty Broadband Defs.' Mot. to Dismiss the Verified Am. Class Action Compl., Dkt. No. 22.

"Director Defendants") had breached their fiduciary duties.[7] The Plaintiffs filed their answering brief for the Motion to Dismiss on September 2, 2016.[8]

On May 31, 2017, I issued a Memorandum Opinion (defined above as "*Sciabacucchi I*") holding that, although the cumulative allegations against Malone and Broadband were probably sufficient to support an inference of control, the contractual restrictions on them meant that they functionally could not exercise actual control.[9] On July 26, 2018, I dismissed, via another Memorandum Opinion (defined above as "*Sciabacucchi II*"), Counts I, II, and IV of the first amended complaint, which served also to dismiss now-non-party Broadband.[10] This left only Count III, a derivative claim that the Director Defendants, including Malone, had breached their fiduciary duties in approving the Broadband Transactions.[11] The parties proceeded to discovery and completed document production on January 31, 2020.[12] Malone's deposition, which the parties argue is relevant to the Motion,

---

[7] The Original Complaint ¶¶ 157–160.
[8] Pl.'s Omnibus Answering Br. In Opp'n to Defs.' Mots. To Dismiss the Verified Am. Class Action Compl., Dkt. No 29.
[9] *Sciabacucchi I*, at *1, *17 ("I find that the contractual restrictions levied on the Stockholder Defendants by the Amended Stockholders Agreement and Charter's Certificate of Incorporation are sufficient to overcome any inference that Liberty Broadband was able to exercise actual control over Charter in relation to the Liberty Share Issuances and Voting Proxy Agreement.").
[10] *Sciabacucchi II*, at *18.
[11] The Original Complaint ¶¶ 165–168.
[12] Order Amending Case Schedule, Dkt. No 193.

occurred on November 13, 2020.[13]  The Plaintiffs filed the Motion on January 20, 2021.[14]

## II. ANALYSIS

In the Motion, the Plaintiffs argue that discovery has revealed new information that supports a re-assertion of the allegation that Broadband and Malone were controllers.  That new information, per the Plaintiffs, should allow them to revive Counts II and IV of the Original Complaint, both of which allege breaches of fiduciary duty against Malone and Broadband.[15]  Sufficient allegation that Malone and Broadband are controllers would also compel me to reassess Count I—the direct claim against the Director Defendants for breaches of fiduciary duty—because the direct nature of that claim rested on the paradigm set forth in *Gentile v. Rossette*, which applies only in case of a controlling stockholder.[16]  Finally, the Plaintiffs also wish to add both a direct and derivative aiding and abetting count against Broadband—new claims, but ones arising from the allegations of the breach of duty and control claims.[17]

---

[13] Def. John Malone and Non-Party Liberty Broadband Corp.'s Opp'n to Pls.' Mot. for Leave to File Verified Second Am. Derivative and Class Action Compl. ¶ 35, Dkt. No 261 [hereinafter "Stockholder Defs.' AB"].

[14] The Motion.

[15] The Motion 9–11.

[16] 906 A.2d 91 (Del. 2006); *see Sciabacucchi II*, at *7–*10.  As I held in *Sciabacucchi II*, "*Gentile* does not apply absent a controlling stockholder." *Id.* at *10.

[17] *See* Pls.' Omnibus Reply in Support of Mot. for Leave to File Verified Second Am. Derivative and Class Action Compl. 7, Dkt. No. 269 [hereinafter "RB"].

The parties, in their briefing, dispute whether this Motion is governed by Court of Chancery Rule 15(a) or Rule 15(aaa) and, if the latter, whether the Plaintiffs have shown that an exception to the law of the case doctrine applies.

*A. The Rule 15 Paradigm*

When a Motion to Amend seeks to re-assert a claim that has been dismissed under Rule 12(b)(6) or Rule 23.1, the first inquiry must be whether the original dismissal of that claim was with or without prejudice. The nature of a dismissal is determined at the time the Court orders the dismissal and, if it results from the Court granting a motion to dismiss, is governed by Rule 15(aaa). That Rule provides that if the Court dismisses a complaint under Rule 12(b)(6) or 23.1, "such dismissal shall be with prejudice . . . unless the Court, for good cause shown, shall find that dismissal with prejudice would not be just under all the circumstances."[18] Thus, in *Zimmerman ex rel. Priceline.com, Inc. v. Braddock*, the Court, in its motion to dismiss opinion, dismissed an amended derivative complaint without prejudice, noting that a dismissal with prejudice "would not be just under the circumstances because of the complex and intertwined relationships among [the parties] . . . and because of the apparently non-public status of certain facts, the absence of which may have materially affected the outcome."[19] Conversely, in *In re EZCORP Inc.*

---

[18] Del. Ct. Ch. R. 15(aaa).
[19] 2002 WL 31926608, at *12 n.76 (Del. Ch. Dec. 20, 2002).

8

*Consulting Agreement Derivative Litigation*, the Court both dismissed the claims against the defendants and found that the plaintiff had "not established good cause for a without-prejudice dismissal."[20] Nonetheless, the *EZCORP* Court noted that should discovery prove the earlier dismissal inequitable, the dismissal could be revisited as an exception to the law of the case doctrine. To support that approach, the *EZCORP* Court cited *Quadrant Structured Products Company, Ltd. v. Vertin*. That case involved only a partial dismissal[21] and held that good cause did not exist for a without-prejudice dismissal because of the availability of an exception to the law of the case doctrine to provide appropriate relief.[22]

The *Quadrant* approach was recently endorsed by the Chancellor. On July 23, 2021, Chancellor McCormick published a letter decision, *In re Mindbody, Inc., Stockholder Litigation*,[23] applying the law of the case doctrine to a set of circumstances almost identical to those here. The defendant in question had been dismissed with prejudice; there, as here, the issue is whether newly discovered evidence raised compelling reasons to allow the revived claim.

If the Court dismisses the claim without prejudice, of course, the plaintiff may replead that claim. If the Court dismisses *with* prejudice, however, the plaintiff may

---

[20] 2016 WL 197814, at *10 (Del. Ch. Jan. 15, 2016).
[21] *Id.* (describing the *Quadrant* decision).
[22] *Quadrant Structured Products Co., Ltd. v. Vertin*, 2014 WL 5465535, at *5 (Del. Ch. Oct. 28, 2014).
[23] 2021 WL 3126762 (Del. Ch. July 23, 2021).

9

only replead the dismissed claim if it can demonstrate that a compelling reason to disregard the law of the case exists.[24]

"The law of the case is established when a specific legal principle is applied to an issue presented by facts which remain constant throughout the subsequent course of the same litigation."[25] By its terms, it contemplates "one continuous action within the same court system"[26] and "applies to decisions rendered by a court that arise again later in the same court, in the same proceedings."[27] "In more simplified terms, the law of the case doctrine operates as a form of intra-litigation *stare decisis*."[28] The doctrine is meant to promote efficiency, but "is not inflexible in that . . . it is not an absolute bar to reconsideration of a prior decision that is clearly wrong, produces an injustice or should be revisited because of changed circumstances."[29] However, "[o]nce a matter has been addressed . . . it is generally held to be the law of that case and will not be disturbed by that court unless compelling reason to do so appears."[30]

---

[24] *In re EZCORP Inc.*, 2016 WL 197814, at *10–*11.
[25] *Frederick-Conaway v. Baird*, 159 A.3d 285, 296 (Del. 2017) (internal quotation marks omitted).
[26] *Id.*
[27] *Id.* (citing *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 5278913, at *7 (Del. Ch. Sept. 10, 2015)).
[28] *Id.* (citing *Carlyle*, 2015 WL 5278913, at *7).
[29] *Id.* (citing *Gannett Co. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000) (emphasis in original)).
[30] *Guy v. State*, 913 A.2d 558, 562 n.2 (Del. 2006); *Zirn v. VLI Corp.*, 1994 WL548938, at *2 (Del. Ch. Sept. 23, 1994).

10

Accordingly, "[a]lthough a court may depart from the law of the case doctrine in 'exceptional cases,' such departures are rare."[31] The Federal Circuit has noted that "[a] departure from law of the case generally requires the discovery of new and material evidence not presented in the prior action or an intervening change of controlling legal authority, or [a showing that] the prior decision is clearly incorrect and its preservation would work a manifest injustice."[32] That standard closely tracks the Delaware standard of requiring a showing of clear error, injustice, or a change in circumstances to disregard the law of the case.[33]

To recapitulate, at the time a claim is dismissed under Rule 12(b)(6) or Rule 23.1, the plaintiff may request that such a dismissal be without prejudice—upon a showing, with good cause, that such a with-prejudice dismissal would be unjust, the Court will grant the request. Absent such a determination, however, dismissals under Rule 12(b)(6) or Rule 23.1 are, by default under Rule 15(aaa), *with* prejudice; and the plaintiff must overcome the law of the case presumption in order to replead the dismissed claim. That standard I apply, below.

---

[31] *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1336 (Fed. Cir. 2004). Our Supreme Court has, in the past, considered nonbinding federal authority in its analysis of the law of the case doctrine. *See State v. Wright*, 131 A.3d 310, 321 n.43, 47, 49 (Del. 2016) (citing federal cases and treatises on federal procedure).

[32] *Toro*, 383 F.3d at 1336.

[33] *Frederick-Conaway*, 159 A.3d at 296 (citing *Gannett Co. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000) (emphasis in original)).

*B. The Motion is denied as to the re-assertion of claims previously dismissed.*

In *Sciabacucchi I*, I addressed breach of fiduciary duty claims against Malone and Broadband. Those claims, to be viable, relied on an assertion that Malone and Broadband were controllers of Liberty. I determined that, although the cumulative allegations against Malone and Broadband were probably sufficient to support an inference of control, they were subject to contractual restrictions that effectively precluded them from exercising actual control.[34] In short, *Sciabacucchi I* determined that Malone and Broadband were not controlling stockholders of Liberty. Accordingly, in *Sciabacucchi II*, I dismissed the claims against Broadband and Malone that required a finding of control and the claims against the Director Defendants that required a controlling stockholder. Now, after fact discovery and Malone's deposition, the Plaintiffs move to amend, arguing that discovery has shown a change in circumstance and that a failure to allow them to amend would work an injustice. They seek to re-assert the claims that required a finding of control—the claims against Malone and Broadband and the direct claim against the Director Defendants—and to assert new aiding and abetting claims against Broadband.

---

[34] *Sciabacucchi I*, at *1, *17 ("I find that the contractual restrictions levied on the Stockholder Defendants by the Amended Stockholders Agreement and Charter's Certificate of Incorporation are sufficient to overcome any inference that Liberty Broadband was able to exercise actual control over Charter in relation to the Liberty Share Issuances and Voting Proxy Agreement.").

Before considering the Motion, then, my first inquiry was whether my dismissals in *Sciabacucchi I* and *Sciabacucchi II*—based, as they were, on a finding that the Plaintiffs had failed to adequately plead that Malone and Broadband were controlling stockholders—were with prejudice. I did not explicitly state whether the dismissals were with prejudice but, under Rule 15(aaa), the default rule is that dismissals under Rule 12(b)(6) are with prejudice. That ruling controls, as law of the case. Accordingly, in order to amend their complaint, the Plaintiffs must show why an exception to the law of the case doctrine applies here; that requires a showing of clear error, injustice, or a change in circumstances to disregard the law of the case.[35]

The Plaintiffs point to three pieces of new evidence that ostensibly represent a change in circumstance or show that *Sciabacucchi I* and *II* work an injustice. First, they note that during Malone's deposition, he "testified that he had 'soft control' over Charter."[36] Second, the Plaintiffs argue that discovery has shown that Broadband had an effective veto over both the TWC Acquisition and the Bright House Acquisition, allowing it to wield control over the structure of those transactions.[37] And finally, the Plaintiffs note that Broadband's four director-

---

[35] *Frederick-Conaway*, 159 A.3d at 296 (citing *Gannett Co. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000) (emphasis in original)).
[36] The Motion 11.
[37] The Motion 11.

13

designees on Charter's (ten-member) board voted on the challenged Broadband Transactions.[38]

I do not find that the combination of these three new pieces of evidence represents a change in circumstances or causes an injustice should the Plaintiffs be unable to amend.

First, the Plaintiffs argue that Malone "testified that he had 'soft control' over Charter."[39] But, as the Defendants point out, Malone's testimony to that effect was in context of and in contrast to a discussion about so-called "hard control."[40] Specifically, the Defendants noted that Malone said, "We didn't have hard control, but we had substantial influence, in the [original stockholders] agreement, on approval of who directors would be that would be independent."[41] Further, when the Plaintiffs' counsel later asked Malone to define "hard control" and "soft control," Malone explained that, "My view of hard control would be basically where I personally or my family personally would own more than 50 percent of the votes of an enterprise."[42] I also note that the allegedly damning quote that the Plaintiffs rely upon, the admission that Malone had soft control of Charter, was in response to a binary question: whether Broadband had hard or soft control of Charter.[43] In

---

[38] RB 4–5.
[39] The Motion 11.
[40] The Stockholder Defs.' AB 7.
[41] The Stockholder Defs.' AB 7.
[42] The Stockholder Defs.' AB 7.
[43] The Stockholder Defs.' AB 7.

response to that question, Malone replied "I would say soft control because we were less than 50 percent."[44] None of this, to my mind, is an assertion or admission that Malone controlled Charter sufficient to compel deviation from the law of the case doctrine.

Second, the Plaintiffs argue that Broadband wielded a veto over the non-challenged TWC and Bright House Acquisitions, both of which, the parties agree, are accretive to Charter. But the "*de facto* veto" the Plaintiffs rely upon was not a contractual right of Broadband, or any other defined right to veto the transactions. Rather, the *de facto* veto existed because Charter's counterparties in the TWC and Bright House Acquisitions—TWC and Advance/Newhouse—either refused to do the deal without Broadband's approval or refused to do the deal without an amendment to Broadband's stockholder agreement with Charter.[45] With regard to the latter, then, Broadband had some ability to influence the acquisitions because it had contractual rights that a counterparty wanted it to yield. Holding a contractual right, alone, does not create in the holder a fiduciary duty to waive the right[46] and a refusal to sacrifice does not make one a controller.

---

[44] The Stockholder Defs.' AB 7–8.

[45] The Motion 11–13.

[46] *Superior Vision Servs., Inc. v. ReliaStar Life Ins. Co.*, 2006 WL 2521426, at *5 (Del. Ch. Aug. 25, 2006) ("[A] significant shareholder, who exercises a duly-obtained contractual right that somehow limits or restricts the actions that a corporation otherwise would take, does not become, without more, a "controlling shareholder" for that particular purpose.").

15

Finally, the Plaintiffs allege that Broadband's designees on the Charter board voted in favor of the Broadband Transactions. But at the time, Broadband had the right to designate four of ten board members—less than a majority.[47] In *Sciabacucchi I*, I noted that the Original Complaint did "not evince actual control over a majority of directors; the pleadings are limited to showing that the directors share interests with [Broadband and Malone], not that the directors are subject to actual control."[48] The Plaintiffs have not asserted any new facts that go to showing that Broadband's four designees dominated the Charter board at Malone's behest, or that the majority of the Charter board was controlled by Malone and Broadband. Accordingly, this allegation, even when combined with Malone's testimony regarding "soft control" does not, to my mind, work to change the circumstances such that *Sciabacucchi I* and *II* should no longer be the law of the case.

In *Sciabacucchi I*, I found that the contractual restrictions on Broadband—including allowing Broadband to designate at most four of ten directors, prohibiting it from acquiring more than 35% of Charter stock, and prohibiting it from soliciting proxies—caused Broadband to be unable to exercise actual control over Charter in connection with the Broadband Transactions.[49] The new evidence that has come to light from discovery has neither negated nor overcome that finding. Accordingly, I

---

[47] *Sciabacucchi I*, at *7.
[48] *Sciabacucchi I*, at *17.
[49] *Sciabacucchi I*, at *17–*18.

16

do not find that a compelling reason to disregard the law of the case exists. The Plaintiffs' Motion for Leave to File Second Amended Complaint is denied as to the reassertion of the previously dismissed Counts I, II, and IV.

*C. The Motion to Amend is granted as to the assertion of the aiding and abetting claims.*

Finally, I address the Plaintiffs' attempt to amend to add aiding and abetting counts against Broadband. Because these are new claims that were not within the purview of the motion to dismiss decided by *Sciabacucchi I* and *II*, the law of the case doctrine does not—in fact, cannot, as no prior dismissal of the claims occurred—apply. Instead, these claims fall squarely into Rule 15, which contains two relevant subsections: Rule 15(a) and Rule 15(aaa). Rule 15(a) provides that (1) "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served" and (2) "[o]therwise, a party may amend . . . only by leave of Court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[50] Rule 15(aaa) provides that, (1) "[n]otwithstanding subsection (a) . . ., a party that that wishes to respond to a motion to dismiss . . . by amending its pleading must file an amended complaint . . . no later than the time such party's answering brief . . . is due to be filed" and (2) if the party fails to amend its pleading "and the Court thereafter

---

[50] Del. Ct. Ch. R. 15(a).

17

concludes that the complaint should be dismissed under Rule 12(b)(6) or 23.1, such dismissal shall be with prejudice . . . unless the Court, for good cause shown, shall find that dismissal with prejudice would not be just under all the circumstances."[51] Because the new aiding and abetting claims were not—and could not have been— subject to a motion to dismiss, I conclude that the applicable Rule is the second half of 15(a).

Rule 15 does not explicitly address a situation where a motion to amend seeks to add a claim that was not within the purview of a previously decided motion to dismiss. In that case, this Court has held, and I find, that Rule 15(a), rather than Rule 15(aaa), applies to the motion to amend.[52] Under Rule 15(a)'s more liberal standard, then, I should grant the Motion if justice so requires—and three considerations go into this determination.[53] First, "[a] motion to amend may be denied . . . if the amendment would be futile, in the sense that the legal insufficiency of the amendment is obvious on its face. That is, the motion may be denied if the proposed amendment would immediately fall to a Rule 12(b)(6) motion to dismiss."[54] Second, "leave to amend should be denied if there is a showing of . . . bad faith, undue delay, dilatory motive, or repeated failures to cure by prior amendment."[55] And third,

---

[51] Del. Ct. Ch. R. 15(aaa).
[52] *Whittington v. Dragon Grp. L.L.C.*, 2011 WL 497612, at *4 (Del. Ch. Feb. 11, 2011).
[53] *Id.*
[54] *Id.*
[55] *Id.*

18

"[p]rejudice to the nonmoving party is the touchstone for the denial of an amendment."[56] The Defendants do not allege that the Plaintiffs, in moving to amend, acted with bad faith or with a dilatory motive,[57] and I find none. Accordingly, I address only futility and prejudice, below.

### 1. The Motion to Amend is not futile.

In *Whittington v. Dragon Group LLC*, this Court denied the defendants' motion to amend to add counterclaims under Rule 15(a) after considering whether an intervening change of law had occurred, whether the defendants "could have included [the counterclaims] in their pleadings from the outset, as an alternative position,"[58] whether the proposed amendment would be futile, and whether there would be prejudice to the opposing party. The Court determined that there was no intervening change of law, the defendants could have easily included their counterclaims, that the amendment would be futile, and that there would be prejudice.[59] Accordingly, the Court denied the defendants' motion to amend.

Here, the Defendants argue vigorously that the Plaintiffs' Motion, examined consistent with *Whittington*, should be disallowed as untimely and futile. The aiding

---

[56] *Id.* at *6 (internal quotation marks omitted).

[57] "Dilatory motive" may strike the reader as an odd phrase, given that "dilatory" is often used as a synonym for "tardy" or "slow." The Shorter Oxford Dictionary, however, gives as a meaning of the adjective "dilatory" "made for the purpose of gaining time." The statutory meaning of "dilatory motive," I conclude, refers to an intent to delay for some advantage to the delaying party.

[58] *Whittington*, 2011 WL 497612, at *5.

[59] *Id.* at *4–*7.

and abetting claims, I note, rest on substantially the same allegations that previously supported the control allegations. The additional factual evidence produced at discovery—*i.e.*, Malone's testimony regarding soft control, Broadband's *de facto* veto over the TWC and Bright House Acquisitions, and the Broadband designees' vote on the Broadband discussions—only somewhat enhance the claims. The claims could have been brought, presumably, on the facts as alleged in the Original Complaint; in any event, the Plaintiffs do not explain why the aiding and abetting claims have only been made possible through the evidence produced by discovery. Because the aiding and abetting claims stem from the same conduct that was alleged to show control, however, they are intertwined with the allegations of the Original Complaint such that they relate back to the time of filing.[60]

Nor does it appear that the claims are futile; the current complaint alleges that the Director Defendants breached fiduciary duties by steering benefits to Malone and Broadband, resulting in damages. Without engaging in a full motion to dismiss analysis, the aiding and abetting claims require, additionally, that the complaint allege knowing participation in that breach by Broadband.[61] The proposed amendment clears that bar.[62] What is left to determine, then, is whether the resulting

---

[60] Del. Ct. Ch. Rule 15(c).

[61] *E.g.*, *Malpiede v. Townsend*, 780 A.2d 1075, 1096 (Del. 2001).

[62] *See Virtus Cap. L.P. v. Eastman Chem. Co.*, 2015 WL 580553, at *21 (Del. Ch. Feb. 11, 2015) (imputing knowledge of individual controller to entity).

20

time delay is substantially prejudicial to the Defendants. If not, the amendment should be allowed.

2. <u>The Defendants will not be unduly prejudiced by the amendment.</u>

The Defendants can be categorized into three groups: the Director Defendants, Malone, and Broadband. The Director Defendants do not allege that they will be prejudiced by the amendment.[63]

As to Defendant Malone, he has been and continues to be a defendant in this action as a director; he was deposed on November 13, 2020 and has engaged in fact discovery. Accordingly, I find that he will not be prejudiced by the addition of aiding and abetting claims against Broadband.

As to Broadband however, the question is much closer. Broadband has not been a party to this action for three years and has participated in fact discovery only as a subpoenaed non-party.[64] On the other hand, per the Plaintiffs, "Broadband is represented by the same lawyers who have represented Malone (its Chairman and controller)."[65] Further, Broadband is controlled by Malone and is a significant stockholder of Charter; it was previously on notice that it was involved in this case, even as a non-party, and it ought to have been on notice that it could be open to other

---

[63] *See generally* The Director Defs' Opp'n to Pls.' Mot. for Leave to File Verified Second Am. Deriv. and Class Action Compl., Dkt. No. 262 [hereinafter "Director Defs.' AB"].
[64] Stockholder Defs.' AB 15.
[65] RB 13.

claims stemming from the same set of facts. Accordingly, I find that there is a quantum of prejudice to Broadband, but that it is not substantial. To mitigate that prejudice, I here hold that should Broadband need to take its own discovery following the amendment, the scheduling order shall be amended to allow it to take discovery.

## III. CONCLUSION

The Plaintiffs' Motion for Leave to File a Second Amended Complaint is denied in part and granted in part. The parties should submit a form of order consistent with this Memorandum Opinion.